UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

-------------------------------------------------------x
                                         :

CHUNG MU SON,                       :

                                   :

                       Plaintiff,    :    Case No. 1:05 CV 2318 (JR)

                                   :

v.                                  :    ECF Case

                                   :

YOUNG SAM KIM,                  :

                                   :

                     Defendant.    :

                                   :

-------------------------------------------------------x

## <u>MOTION OF DEFENDANT YOUNG SAM KIM TO DISMISS THE COMPLAINT</u>

        Pursuant to Fed. R. Civ. P. 56, Defendant Young Sam Kim hereby files his motion to dismiss the Complaint in this action.

        In support of this motion, defendant relies upon his supporting memorandum filed herewith, the Affidavit of the Hon. Yeo Sang-Kyu, the Affidavit of Timothy J. McCarthy, Esq., and upon the entire record of these proceedings.

## <u>ORAL HEARING REQUESTED</u>

        Defendant requests an Oral Hearing on this Motion.

## PROPOSED ORDER

A proposed Order is annexed hereto.

Respectfully submitted,

_____

James J. McGuire
Sy Kim
Irving Kagan
Timothy J. McCarthy
SHEPPARD MULLIN RICHTER &HAMPTON, LLP
30 Rockefeller Plaza, 24th Floor
New York, NY  10112
(212) 332-3800

Robert M. Disch
1300 I Street, NW
Eleventh Floor East
Washington, DC  20005
(202) 218-0000

*Attorneys for Defendant*
*Young Sam Kim*

Dated:  April 14, 2006

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
-------------------------------------------------------x
                                                       :
CHUNG MU SON,                                          :
                                                       :
                              Plaintiff,               :        **Case No. 1:05 CV 2318 (JR)**
                                                       :
              v.                                       :        **ECF Case**
                                                       :
YOUNG SAM KIM,                                         :
                                                       :
                              Defendant.               :
                                                       :
-------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS OF DEFENDANT YOUNG SAM KIM


SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
Suite 2400
New York, New York  10112
(212) 332-3800

1300 I Street, NW
Eleventh Floor East
Washington, D.C.  20005
(202) 218-0000

*Attorneys for Defendant*
*    Young Sam Kim*

TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

PRELIMINARY STATEMENT ..............................................................................1

BACKGROUND ....................................................................................................2

SUMMARY OF ALLEGATIONS ..........................................................................4

LIST OF DEFENDANT'S AUTHORITIES..............................................................6

ARGUMENT ........................................................................................................7

I       THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT. ...............7

II      THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER
        PLAINTIFF'S CLAIMS.................................................................................12

        A.    The ATS Does Not Confer Subject-Matter Jurisdiction Over Claims Of
              Torture Or Arbitrary Imprisonment By Non-State Actors. ..................13

        B.    Plaintiff May Not Assert A Claim For "Arbitrary Imprisonment" Under
              The ATS.................................................................................15

        C.    Plaintiff Has Not Sufficiently Alleged Torture To Invoke Subject-Matter
              Jurisdiction Under The ATS And The TVPA.......................................16

        D.    Plaintiff, In Fact, Alleges Neither Torture Nor Arbitrary Detention By
              Defendant, But Malicious Prosecution Instead.....................................21

        E.    Plaintiff Has Failed To Allege Facts Showing That Defendant Committed
              Any Tort In Violation Of The Law Of Nations. ...................................22

III     PLAINTIFF HAS FAILED TO EXHAUST AVAILABLE REMEDIES IN
        SOUTH KOREA. .........................................................................................23

IV      THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM
        NON CONVENIENS*. ....................................................................................27

        A.    South Korea Is An Adequate Alternative Forum....................................27

        B.    The Private Interests Of The Parties Favor Adjudication In South Korea. ...........28

        C.    The Public Interest Favors Adjudication In South Korea.......................30

V      THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT. .............31

    A.      Because Plaintiff Does Not Allege That Defendant Was A State Actor At The Time Of The Events Alleged, Plaintiff Cannot State A Claim For Torture Under The ATS..................................................................................33

    B.      Plaintiff's Claim For "Arbitrary Imprisonment" Fails To State A Claim Under The ATS..........................................................................................34

    C.      Plaintiff, In Fact, Alleges Neither Torture Nor Arbitrary Detention By Defendant, But Malicious Prosecution Instead......................................34

    D.      Plaintiff Has Failed To Allege Facts Showing That Defendant Committed Any Tort In Violation Of The Law Of Nations. ....................................35

        1.      Plaintiff Has Failed To State A Claim For Torture Under The TVPA. ...............................................................................................35

        2.      Plaintiff's Allegation Of Causation Is Wholly Conclusory And Hence Insufficient To State A Claim For Torture. ....................35

        3.      Plaintiff Does Not Allege Defendant Conspired With Prosecutorial Officials Or Aided And Abetted The Alleged Abuse. ...............37

VI      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE....................39

CONCLUSION......................................................................................................40

TABLE OF AUTHORITIES

<u>Cases</u>

Aguinda v. Texaco,
    303 F.3d 470 (2d Cir. 2002) .................................................................................27, 28

Aldana v. Del Monte Fresh Produce, N.A., Inc.,
    416 F.3d 1242 (11th Cir. 2005) .........................................................................15, 34

An v. Chun,
    134 F.3d 376, 1998 WL. 31494 (9th Cir.) ...............................................................8

Arce v. Garcia,
    400 F.3d 1340 (11th Cir. 2005) .........................................................................21, 34

Baltierra v. W.V. Bd. of Med.,
    253 F. Supp. 2d 9 (D.D.C. 2003) ............................................................................7

Bao Ge v. Li Peng,
    201 F. Supp. 2d 14 (D.D.C. 2000) .....................................................6, 12, 14, 33

Basil v. Milliken,
    1990 WL. 45738 (D.C. Cir. 1990) ........................................................................37

Beanal v. Freeport McMoRan, Inc.,
    197 F.3d 161 (5th Cir. 1999) .....................................................................14, 34, 38

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) ..........................................................................6, 37

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985) ..........................................................................................10, 11

Burnett v. Al Baraka Inv. and Dev. Corp.,
    274 F. Supp. 2d 86 (D.D.C. 2003) .................................................................3, 32, 37

Calder v. Jones,
    465 U.S. 783 (1984) .................................................................................................10

Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC,
    148 F.3d 1080 (D.C. Cir. 1998) .............................................................................12

Collett v. Socialist Peoples' Libyan Arab Jamahiriya,
    362 F. Supp. 2d 230 (D.D.C. 2005) .................................................................23, 26

Conley v. Gibson,
    355 U.S. 41, 78 S. Ct. 99 (1957) ...........................................................................32

De Wit v. KLM Royal Dutch Airlines, N.V.,
    570 F. Supp. 613 (S.D.N.Y. 1983) ...................................................................22, 34

Dennis v. Sparks,
    449 U.S. 24, 101 S. Ct. 183 (1980) ...................................................................13

In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980,
    540 F. Supp. 1141 (D.D.C. 1982) ...................................................................27

Doe v. Exxon Mobil Corp.,
    393 F. Supp. 2d 20 (D.D.C. 2006) ...........................................14, 15, 22, 34, 36, 37

Doe v. Islamic Salvation Front,
    993 F. Supp. 3 (D.D.C. 1998) ...................................................................12

Doe v. Israel,
    400 F. Supp. 2d 86 (D.D.C. 2005) ...........................................................6, 9, 10, 11

Doe v. Qi,
    349 F. Supp. 2d 1258 (N.D. Cal. 2004) .......................................................18, 19, 20

Doe v. Unocal Corp.,
    963 F. Supp. 880 (C.D. Cal. 1997) ...................................................................14

Eastman Kodak Co. v. Kavlin,
    978 F. Supp. 1078 (S.D. Fla. 1997) ...............................................................21, 34

Edmond v. United States Postal Serv. Gen. Counsel,
    949 F.2d 415 (D.C. Cir. 1991) ...................................................................7

El-Fadl v. Central Bank of Jordan,
    75 F.3d 668 (D.C. Cir. 1996) ...................................................................27

Enahoro v. Abubakar,
    408 F.3d 877 (7th Cir. 2005) ...............................................................23, 26, 33

Fireman's Fund Ins. Co. v. Pan Ocean Bulk Carriers, Ltd.,
    559 F. Supp. 527 (N.D. Cal. 1983) ...................................................................23

First Chicago Int'l v. United Exchange Co.,
    836 F.2d 1375 (D.C. Cir. 1988) ...................................................................7

Ford ex rel. v. Garcia,
    289 F.3d 1283 (11th Cir. 2002) ...................................................................36

Friends for All Children, Inc. v. Lockheed Aircraft Corp.,
    717 F.2d 602 (D.C.Cir. 1983) ...................................................................30

GTE New Media Servs. Inc. v. Bellsouth Corp.,
    199 F.3d 1343 (D.C. Cir. 2000) ...................................................................7

Gorman v. Ameritrade Holding Corp.,
    293 F.3d 506 (D.C. Cir. 2002) ...................................................................9

Gulf Oil v. Gilbert,
    330 U.S. 501, 67 S. Ct. 839 (1947) ...........................................................27, 28, 30

Halberstam v. Welch,
    705 472 477-78 (D.C. Cir. 1983) .................................................................38

Hanson v. Denckla,
    357 U.S. 235, 78 S. Ct. 1228 .....................................................................11

Helicopteros Nacionales de Colombia, S.A. v. Hall,
    466 U.S. 408, 104 S. Ct. 1868 (1984) .........................................................8

Holmes v. Sec. Investor Prot.ection Corp.,
    503 U.S. 258, 112 S. Ct. 1311 (1992) .........................................................35

Honshu Shipping Co., Ltd. v. M/V Trade Zale,
    2005 WL. 3676097 .....................................................................................23

Ibrahim v. Titan Corp.,
    391 F. Supp. 2d 10 (D.D.C. 2005) .......................................................13, 33

Iwanowa v. Ford Motor Co.,
    67 F. Supp. 2d 424 (D.N.J. 1999) ...............................................................14

Judicial Watch, Inc. v. U.S. Senate,
    432 F.3d 359 (D.C. Cir. 2005) ....................................................................35

Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,
    115 F.3d 1020 (D.C. Cir. 1997) ..................................................................37

Kadic v. Karadzic,
    70 F.3d 232 (2d Cir. 1995) ..........................................................................12

Kilburn v. Socialist People's Libyan Arab Jamahariya,
    376 F.3d 1123 (D.C. Cir. 2004) ..................................................................35

Klinghoffer v. S.N.C. Achille Lauro,
    937 F.2d 44 (2d Cir. 1991) ............................................................................8

Kowal v. MCI Communications Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) ....................................................................32

Kumar v. Gonzales,
    435 F.3d 1019 (9th Cir. 2006) ...............................................................19, 20

LTX Corp. v. Daewoo Corp.,
    979 F. Supp. 51 (D. Mass. 1997) ................................................................23

Latuszkin v. City of Chicago,
    250 F.3d 502 (7th Cir. 2001) .......................................................................13

Martinez v. City of Los Angeles,
    141 F.3d 1373 (9th Cir. 1998) ...............................................................15, 34

Maugein v. Newmont Mining Corp.,
    298 F. Supp. 2d 1124 (D. Colo. 2004) ...................................................21, 34

Meyer v. Reno,
    911 F. Supp. 11 (D.D.C. 1996) .................................................................37

Mwani v. bin Laden,
    417 F.3d 1 (D.C. Cir. 2005) ....................................................6, 7, 9, 10, 11

National Wrestling Coaches Ass'n v. U.S. Dept. of Educ.,
    263 F. Supp. 2d 82 (D.D.C. 2003) ...........................................................36

Newborn v. Yahoo! Inc.,
    391 F. Supp. 2d 1814 (D.D.C. 2005) ........................................................39

Nix v. Hoke,
    139 F. Supp. 2d 125 (D.D.C. 2001) ..........................................................36

Papasan v. Allain,
    478 U.S. 265, 106 S. Ct. 2932 (1986) .........................................................6

Papasan v. Allain,
    478 U.S. 265, 106 S. Ct. 2932 (1986) .......................................................35

Piper Aircraft Co. v. Reyno,
    454 U.S. 235, 102 S. Ct. 252 (1981) .........................................................27

Presbyterian Church of Sudan v. Talisman Energy, Inc.,
    244 F. Supp. 2d 289 (S.D.N.Y. 2003) ......................................................37

Price v. Socialist People's Libyan Arab Jamahiriaya,
    294 F.3d 82 (2002) ...............................................................6, 17, 18, 31

Princz v. Fed. Republic of Germany,
    26 F.3d 1166 (D.C. Cir. 1994) ..................................................................11

Reuber v. United States,
    787 F.2d 599 (D.C. Cir. 1986) ....................................................................7

Saltany v. Reagan,
    886 F.2d 438 (D.C. Cir. 1989) ..................................................................31

Sanchez-Espinoza v. Reagan,
    770 F.2d 202 (D.C. Cir. 1985) ..............................................................13, 33

Sequiha v. Texaco,
    847 F. Supp. 61 (S.D. Tex. 1994) .............................................................27

Silverman v. Weil,
    662 F. Supp. 1195 (D.D.C. 1987) .............................................................38

Simpson v. Socialist People's Libyan Arab Jamahiriya,
    362 F. Supp. 2d 168, 5B Charles A. Wright & Arthur A. Miller ...............2

Sosa v. Alvarez-Machain,
    542 U.S. 692, 124 S. Ct. 2739 (2004) .................6, 13, 15, 16, 20, 26, 33, 34, 37

Sullivan-Obst v. Powell,
       300 F. Supp. 2d 85 (D.D.C. 2004) ..................................................................38

Swierkiewicz v. Sorema N.A.,
       534 U.S. 506, 122 S. Ct. 992 (2002) .................................................6, 32, 39

Tel-Oren v. Libyan Arab Republic,
       726 F.2d 774 (D.C. Cir. 1984) ...........................................6, 13, 16, 33

In re Terrorist Attacks on September 11, 2001,
       349 F. Supp. 2d 765 (S.D.N.Y. 2005)H...........................................37

Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth,
       500 F. Supp. 565 (C.D. Cal. 1980) ...............................................22

Wang v. Ashcroft,
       320 F.3d 130 (2d Cir. 2003)................................................19, 20

Wiwa v. Royal Dutch Petroleum Co.,
       226 F.3d 88 (2d Cir. 2000).............................................................27

Zedan v. Kingdom of Saudi Arabia,
       849 F.2d 1511 (D.C. Cir. 1988) ...................................................11

Statutes

42 U.S.C. § 1983 ................................................................................13

42 U.S.C. § 1983 ........................................................................14, 38

28 U.S.C. § 1350 ..........................................................................1, 6

28 U.S.C. § 1350 note § 2 ..............................................................35

28 U.S.C. § 1350 note § 3(b)(1).......................................................20

28 U.S.C. § 1605(f) .........................................................................23

D.C. Code § 13-423(a)(4) ...............................................................9

D.C. Code Ann. §§ 13-4123(a)(1) ................................................11

Fed. R. Civ . P. 4(k)(2)....................................................................9

Fed. R. Civ. P. 4(k)(2)....................................................................10

Fed. R. Civ. P. 8(a)(2) ...................................................................32

Fed. R. Civ. P. 12(b)(1)...................................................................7

Fed. R. Civ. P. 12(b)(2)...................................................................7

Fed. R. Civ. P. 12(b)(6)....................................................7, 32, 35

Other Authorities

Federal Practice and Procedure, § 1357 (3rd Ed. 2004) ...................................................................2

Prosser & Keeton on the Law of Torts 263 (5th ed. 1984)............................................................35

Restatement of Torts (2nd) § 653 (1977)..................................................................................21, 34

TVPA, Pub. L. 102-256, 106 Stat. 73, § 2(c) ............................................................................23

## INTRODUCTION

Defendant Young Sam Kim respectfully submits this Memorandum of Law, along with the Affidavits of Honorable Yeo Sang-Kyu, sworn to on April 12, 2006, ("Sang-Kyu Affidavit") and Timothy J. McCarthy, Esq., sworn to on April 13, 2006, ("McCarthy Affidavit"), in support of his motion to dismiss all claims against him in the Complaint.  For the reasons stated herein and in the remainder of the record, this motion is meritorious and should be granted.

## PRELIMINARY STATEMENT

The Complaint herein alleges grave wrongdoing in 1992 by prosecutorial officials of the Republic of Korea ("South Korea").  Relying upon the Alien Tort Statute, 28 U.S.C. § 1350 ("ATS"), and the Torture Victims Protection Act, Pub. L. 102-256, 106 Stat. 73 (1991) ("TVPA"), it attempts to hold defendant Young Sam Kim -- then a candidate for the Presidency of South Korea -- entirely liable for that wrongdoing.  Only *after* the alleged misconduct by defendant was defendant actually elected President of his country.

The Complaint is baseless, since it contains (i) no factual allegations showing that defendant took any part in the abuses alleged or, for that matter, that he had any knowledge of those wrongs; (ii) no averment that defendant has had any contacts with the United States at all; (iii) no alleged facts sufficient to establish this Court's subject-matter jurisdiction under the ATS and TVPA; and (iv) insufficient facts to state his claims against defendant or fulfill various other prerequisites of those claims.  In sum, this plaintiff offers only innuendo and conclusory statements of law that are insufficient to withstand a motion to dismiss pursuant to Fed. R.R. Civ. P. 12(b)(1), 12(b)(2), and/or 12(b)(6).  Accordingly, in the absence of allegations connecting President Kim to the wrongs alleged in the Complaint or to the United States, plaintiff's claims must all be dismissed.

## BACKGROUND

In February 1993, following the events alleged by plaintiff, defendant Young Sam
Kim[1] became the first democratically-elected President of South Korea in over thirty years.  A
lifelong democratic activist and opposition leader who had been jailed and subjected to violent
attacks by government agents, President Kim succeeded four consecutive militarist regimes.
Each had maintained its power through a series of coups, punitive actions such as the massacre at
Kwangju in 1979 in which thousands were killed by government troops, and routine torture.
See, e.g., Don Oberdorfer, "The Two Koreas:  A Contemporary History," at 175-77 (Basic
Books 2001) (noting that defendant was jailed and subjected to an acid attack in 1969 by the
military regime of Park Chung Hee); Bruce Cumings, "Korea's Place in the Sun: A Modern
History," at 384, 395 (Norton 2005) (during militarist regime of Chun Doo Hwan in 1983, "Kim
Young Sam began a hunger strike on the anniversary of [the Kwangju massacre], demanding a
return to democracy . . . an unusual and courageous event in this dark period"; "[w]ith the 1992
elections and the accession to power of Kim Young Sam in February 1993 . . . the military was
finally retired to the barracks.").[2]

As President, defendant Kim set out to establish firmly the nascent democratic
government of the Republic, address the corruption rampant under previous Presidents, and levy
justice upon those who had committed human rights abuses under the former regimes:

---

[1]    Defendant has followed plaintiff's practice of transposing his surname, "Kim," with his given
names.

[2]    The Court may take judicial of these historical facts without converting the present dismissal
motion to one for summary judgment.  See Simpson v. Socialist People's Libyan Arab
Jamahiriya, 362 F.Supp.2d 168, 178 n.8 (D.D.C. 2005); 5B Charles A. Wright & Arthur A.
Miller, Federal Practice and Procedure, § 1357, at 376 (3rd Ed. 2004).

> In November 1995 [President Kim] arranged to indict [former
> Presidents Chun Doo Hwan and Roh Tae Woo] for the coup in
> December 1979 and the bloodletting at Kwangju five months later.
> Unlike any other former military dictatorship in the world, the new
> democratic regime in Korea did not allow bygones to be bygones:
> Kim Young Sam jailed the two former presidents and launched
> official investigations of their crimes. . . . This was a fine moment
> for Korean democracy, and vindicated the masses of Koreans who
> had fought for democratic rule over the past fifty years.

See Cumings at 395.

The Complaint, however, draws a very different picture of President Kim.

Plaintiff suggests that defendant, a lifelong opponent of arbitrary detention and torture, himself

used those same tactics to silence him, a magazine publisher who had run a story asserting that

defendant had had a child out of wedlock. Close scrutiny of the Complaint, however -- so

necessary where the charges asserted are as grave as those here, see, e.g., Burnett v. Al Baraka

Inv. and Dev. Corp., 274 F.Supp.2d 86, 103-04 (D.D.C. 2003) (Robertson, J.) -- reveals that

plaintiff has proffered *no* allegations of fact that, even taken as true, show that defendant took

any part in, or indeed had any knowledge of, the alleged abuse of plaintiff by South Korean

officials. Scrutiny of the Complaint also demonstrates that plaintiff has stated no basis (i) upon

which this Court can exercise personal jurisdiction over defendant; (ii) for the Court to exercise

subject-matter jurisdiction over the matter; (iii) to excuse plaintiff's failure to exhaust available

remedies in the courts of South Korea; (iv) to adjudicate plaintiff's claims in this forum; or (v) to

believe that plaintiff will be able to cure the fatal defects of his case if given an opportunity to

replead. Accordingly, defendant respectfully requests that the Court forthwith dismiss plaintiff's

claims in their entirety, with prejudice.

## SUMMARY OF ALLEGATIONS

The Complaint contains sparse and conclusory allegations regarding defendant and the wrongs alleged, which are recited below for the Court's convenience:

- Both plaintiff and defendant are nationals of South Korea. Plaintiff resides in Virginia; defendant resides in Seoul. Complaint ¶ 1-2.

- In 1992, plaintiff published an article in a magazine of which he himself was the publisher, asserting that defendant, then a private party and a candidate for the Presidency, had had a child out of wedlock. Id. ¶ 4.

- In May 1992, defendant filed a complaint with Seoul Prosecutor's Office (as is the normal procedure in a claim of defamation in most civil law systems, like that of South Korea), alleging that plaintiff had published a libelous article. Id. ¶ 5.

- Plaintiff was arrested on the charge of defamation and held in the office of the prosecutor. He was denied access to a lawyer and was interrogated throughout the night. His interrogators, seeking a confession, "hit and kicked him hard scores of times on his head, chest, and legs during the interrogation. . . . [In the morning] plaintiff was allowed to use a bathroom to wash blood from his face before being taken to a Prosecutor's office for further interrogation." Id. ¶¶ 5-7.

- Plaintiff was subsequently indicted on the charge of defamation and was held pending trial for several weeks. During that time, plaintiff's mother passed away, in part because of the stress resulting from her son's prosecution. Id. ¶ 8.

- In June 1992, the Seoul criminal court commenced a trial on the libel charge. Defendant asked that the charge be dropped, and plaintiff was released. Id. ¶ 9-10.

- Defendant's aides subsequently sought a settlement of the dispute between the parties, together with a retraction of plaintiff's previous article. At defendant's behest, officials of the Korean Central Intelligence Agency pressured plaintiff to settle the dispute and provide a retraction, and South Korean tax authorities threatened an audit of his magazine's books. Id. ¶ 11.

- "Defendant's false statement to authorities caused Plaintiff's incarceration and torture by the interrogators. Defendant's tortious actions proximately resulted in large financial losses to the magazine and to plaintiff personally during the ensuing five years and in extreme emotional distress to Plaintiff." Id. ¶ 12.

- Plaintiff was unable to file suit in South Korea while defendant served as President, because "[d]efendant's control of the judiciary [e]nsured that any such suit would be nullified or defeated." Additionally, plaintiff could not proceed in South Korea after defendant's term ended, because "[t]he South Korean Government voided Plaintiff's Korean passport, leaving Plaintiff with no passport of any kind and no capability to travel to Korea to file suit there." Id. ¶¶ 14-15.

- In March 2005, another magazine repeated the allegation that defendant had had a child out of wedlock. Id. ¶ 16.

Even taking plaintiff's allegations as true for purposes of the present motion, plaintiff does not allege *any* facts showing that defendant had any part whatsoever in plaintiff's alleged abuse at the hands of government prosecutors.  It is worth emphasizing that defendant was not inaugurated, and indeed was not even elected, as President until *after all* of the events complained of had occurred.  See Complaint ¶¶ 2, 4-12.  While plaintiff acknowledges this fact and does not allege that defendant at that time was anything other than a private person, plaintiff does not allege any facts showing any conspiracy between defendant and the government officials in question, or any facts showing that defendant aided or abetted those officials' purported abuse of plaintiff.

Instead of any factual showing of defendant's putative complicity therein, plaintiff proffers the bald, conclusory allegation -- upon which his entire case is founded -- that "Defendant's false statement to authorities caused Plaintiff's incarceration and torture by the interrogators."  See Complaint ¶ 12.  Absent some allegation showing defendant's complicity with the prosecutor's office in the alleged abuse of plaintiff, this allegation is tantamount, at best, to one of malicious prosecution.  This, of course, is not actionable as a violation of the law of nations under the ATS or as a violation of the TVPA.  See Points II and V, infra.  Moreover, because the prosecution in question was for defamation and defendant voluntarily dropped the charges against plaintiff in South Korea, proof of plaintiff's claims would require this Court to determine the truth or falsity of the statements upon which the defamation charge was based in South Korea some 14 years ago -- again, a task that neither the ATS nor the TVPA requires this Court to undertake.

In addition to failing to state either a basis for subject-matter jurisdiction or a claim under either the ATS or TVPA, plaintiff has also entirely failed to state any grounds upon which the Court might exercise personal jurisdiction over defendant. Plaintiff does not allege that defendant has had any contacts with the United States or directed any tortious acts towards this forum. Plaintiff also has failed to set forth facts sufficient to excuse his failure to exhaust the numerous viable remedies available to him in South Korea, or to justify adjudication of his claims in this forum. Plaintiff has utterly failed to state his putative claims for torture and arbitrary imprisonment under the ATS and TVPA and tenders no reason to believe that he might be able to cure the manifold fatal defects of his Complaint if given an opportunity to replead. Accordingly, plaintiff's claims must be dismissed in their entirety, and with prejudice.

### LIST OF DEFENDANT'S AUTHORITIES

Defendant relies primarily upon the following authorities:

- The Alien Tort Statute, 28 U.S.C. § 1350;

- The Torture Victims Protection Act, Pub.L. 102-256, 106 Stat. 73 (1991);

- Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739 (2004);

- Mwani v. bin Laden, 417 F.3d 1 (D.C. Cir. 2005);

- Doe v. Israel, 400 F.Supp.2d 86 (D.D.C. 2005);

- Bao Ge v. Li Peng, 201 F.Supp.2d 14 (D.D.C. 2000);

- Tel-Oren v. Libyan Arab Republic, 726 F.2d 774 (D.C. Cir. 1984);

- Price v. Socialist People's Libyan Arab Jamahiriaya, 294 F.3d 82 (2002);

- Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932 (1986);

- Browning v. Clinton, 292 F.3d 235 (D.C. Cir. 2002); and

- Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992 (2002).

**ARGUMENT**

All claims against defendant should be dismissed pursuant to (i) Fed. R. Civ. P. 12(b)(1), because the Court lacks subject matter jurisdiction over the matter; (ii) Fed. R. Civ. P. 12(b)(2), because the Court lacks personal jurisdiction over defendant; and (iii) Fed. R. Civ. P. 12(b)(6), because plaintiff fails to allege that defendant took any part in the abuses alleged and fails to allege violations of the law of nations or the TVPA, and hence fails to state any actionable claim against defendant.

**I**

**THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT.**

As plaintiff himself alleges, defendant is a national of the Republic of Korea.  See Complaint ¶ 2.  Plaintiff, therefore, bears the burden of establishing personal jurisdiction over defendant.  See Reuber v. United States, 787 F.2d 599, 599 (D.C. Cir. 1986); Baltierra v. W.V. Bd. of Med., 253 F.Supp.2d 9, 13 (D.D.C. 2003).  To survive a motion to dismiss, plaintiff must make a *prima facie* showing of facts sufficient to support a finding of personal jurisdiction, under either a theory of general jurisdiction or one of specific jurisdiction based upon the events giving rise to plaintiff's claims.  See Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C. Cir. 2005) (plaintiff must make *prima facie* showing of personal jurisdiction); Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C. Cir. 1991) (same).  "Conclusory statements do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction. . . . The bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction." GTE New Media Servs. Inc. v. Bellsouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000) (internal quotations and emendations omitted), quoting First Chicago Int'l v. United Exchange Co., 836 F.2d 1375, 1378-79 (D.C. Cir. 1988).

In the instant case, while plaintiff has identified the supposed source of the Court's subject-matter jurisdiction and the propriety of the venue, see Complaint ¶ 3, plaintiff offers nothing whatsoever in support of the proposition that this Court has personal jurisdiction over defendant. See id. ¶¶ 1-3. In short, plaintiff has failed to allege *any* contacts of *any* kind between defendant and the United States. As the allegations rendered above illustrate, plaintiff has proffered no facts whatsoever to support the proposition that defendant has had even minimal contacts with the United States.

In fact, plaintiff cannot make any such allegation, because defendant has had no substantive contacts at all with this country. Defendant has never done business, maintained a place of business, or been licensed to do business in any U.S. jurisdiction, and plaintiff has made no such claim. See Sang-Kyu Affidavit ¶ 2. Plaintiff does not allege that defendant has ever entered into any contracts with U.S. entities or any contracts to be performed in whole or in part in the U.S., or that defendant has ever entered into any partnership, joint venture, or any other such relationship with a U.S. entity, or even invested in any U.S. entity. Plaintiff does not claim that defendant has ever maintained an agent for service of process in the U.S., brought an action in a U.S. Court, or otherwise submitted himself to the jurisdiction of any U.S. authority in any way.[3] Thus, defendant has had no "continuous and systematic" contacts with any State or with the District of Columbia, and is not subject to the general jurisdiction of the Courts of any State or of the District of Columbia. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

---

[3] Defendant, during his term as President, did visit the United States on several occasions in his official capacity. Such visits, however, do not confer general jurisdiction, see Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 51-52 (2d Cir. 1991), and were wholly unrelated to the causes of action asserted in this case. See also An v. Chun, 134 F.3d 376, 1998 WL 31494 (9th Cir.) (unpublished disposition) (dismissing ATS claims against previous presidents of South Korea for lack of personal jurisdiction, despite official visits to U.S.).

408, 414-16, 104 S.Ct. 1868, 1872-73 (1984) (general jurisdiction proper only where defendant's business contacts with forum continuous and systematic); Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C. Cir. 2002) (same).

Moreover, plaintiff may not invoke specific jurisdiction over defendant, pursuant to either the District of Columbia's long-arm statute or Fed. R. Civ . P. 4(k)(2). The District's long-arm statute provides no basis for jurisdiction over defendant, because plaintiff has alleged (and defendant has had) no contacts whatsoever with the District of Columbia, and because, by plaintiff's own allegations, defendant has caused no injurious effect there. See D.C. Code § 13-423(a)(4) (providing jurisdiction where defendant causes injury within District by act outside of District, if defendant also engages in persistent course of conduct in District); Mwani v. Bin Laden, 417 F.3d at 8-11 (where only specific jurisdiction in question, traditional to review applicable long-arm statute and determine whether exercise of specific jurisdiction comports with due process; latter question turns on defendant's minimum contacts with United States and whether he "purposefully directed" tortious acts at forum); Doe v. Israel, 400 F.Supp.2d 86, 108-09 (D.D.C. 2005) (D.C. long-arm statute applies only where defendant (i) transacted business within District or (ii) caused tortious injury in District by act or omission outside District, *and* engaged in consistent course of conduct, commercial or otherwise, in District). The District's long-arm statute, therefore, does not grant personal jurisdiction over defendant. See, e.g., Gorman, 293 F.3d at 509 ("[B]ecause [plaintiff's] claim against [defendant] does not arise out of any business transacted between the parties in the District, this font of jurisdiction is unavailable.").

Additionally, plaintiff may not invoke nationwide service of process (and hence the jurisdiction of this Court) under Fed. R. Civ. P. 4(k)(2), because, again, defendant has had no contacts whatsoever with the United States (and plaintiff has alleged none). The exercise of personal jurisdiction over defendant, consequently, would be inconsistent with the Constitution and laws of the United States. See Mwani at 10-11 ("Whether the exercise of jurisdiction is 'consistent with the Constitution' for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Due Process Clause."). Constitutional due process requires that a plaintiff must always allege facts demonstrating that a defendant has at least "minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Calder v. Jones, 465 U.S. 783, 788 (1984); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985) ("[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum . . . ."); Doe v. Israel, 400 F.Supp.2d at 108. As noted above, plaintiff here has failed to allege *any* substantive contact of *any* kind between defendant and the United States. And, defendant has, in actuality, had no substantive contacts at all with this country and, in particular, never done any sort of business in any U.S. jurisdiction.

Finally, again, by plaintiff's own allegations, defendant has not directed any tortious actions toward the United States, nor has any supposed tortious act by defendant had a foreseeable, direct effect in the United States. See, e.g., Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (specific jurisdiction exercised over foreign defendant only if defendant "purposefully directed" activities at forum residents) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473 (1984)); Doe v. Israel, 400 F.Supp.2d at 106-07, 110 ("[C]ourts ordinarily

do not find direct effects in cases that concern injuries suffered on foreign soil by plaintiffs who subsequently returned to the United States[,]" and complaint nowhere alleges defendants intended to cause injury in United States, as effects doctrine requires), citing Princz v. Fed. Republic of Germany, 26 F.3d 1166, 1172-73 (D.C. Cir. 1994) (same), and Zedan v. Kingdom of Saudi Arabia, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (same).

Accordingly, plaintiff may not invoke specific personal jurisdiction over defendant, because, once more, he has had no contacts whatsoever with, and plainly has directed no tortious act towards, the United States. See D.C. Code Ann. §§ 13-4123(a)(1), (a)(3); compare Mwani, 417 F.3d at 13 n.12 (defendant "engaged in unabashedly malignant actions directed at [and] felt in this forum," where, unlike here, plaintiff specifically pleaded defendants' knowing participation in plot to attack U.S. embassies, and where defendants supported allegations with additional *specific* documentation showing defendants' participation in tortious acts); Doe v. Israel, 400 F.Supp.2d at 108-09 ("The complaint is entirely devoid of any allegation that [defendants] have transacted any business in the district" and plaintiffs fail to allege injury within district).

At bottom, plaintiff tenders *nothing* that could conceivably be read to assert that defendant has had the purposeful contacts with the United States necessary, for due process purposes, to establish this Court's personal jurisdiction over him. See Burger King, 471 U.S. at 471-74 (foreign defendant not subjected to "binding judgments of a forum with which he has established no meaningful contacts, ties or relations") (internal quotation and citation omitted); Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."); Doe v.

Israel, 400 F.Supp.2d at 109 ("[P]laintiffs have given the Court no basis to find that the requirements of the Due Process Clause, or the District of Columbia long-arm statute, are even colorably satisfied."). Accordingly, plaintiff's claims against defendant must be dismissed in their entirety.[4]

## II

## THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS.

The elements of a claim under the ATS are that (i) plaintiff is an alien; (ii) the claim is one in tort; and (iii) the tort is committed in violation of the law of nations or a treaty of the United States. See Bao Ge v. Li Peng, 201 F.Supp.2d 14, 19-20 (D.D.C. 2000); Doe v. Islamic Salvation Front, 993 F.Supp. 3, 7 (D.D.C. 1998). Where a plaintiff fails to allege all the elements of such a claim, there is no basis for subject-matter jurisdiction under the ATS. See Kadic v. Karadzic, 70 F.3d 232, 238 (2d Cir. 1995) ("Because the [ATS] requires that plaintiffs plead a "violation of the law of nations" at the jurisdictional threshold, this statute requires a [] searching review of the merits to establish jurisdiction.").

While the first two elements of an ATS claim are satisfied here -- i.e., plaintiff is an alien and he alleges a tort of some kind -- plaintiff has utterly failed to aver a tort in violation of the law of nations or that defendant had any part in it. Accordingly, plaintiff has failed to state

---

[4]  Additionally, because plaintiff has tendered no allegations whatsoever from which the Court could infer that limited jurisdictional discovery might remedy plaintiff's failure to state a basis for personal jurisdiction over defendant, such discovery is inappropriate. See Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1089 (D.C. Cir. 1998) (plaintiff "has alleged absolutely nothing, upon either information or belief, to indicate that a court in the District of Columbia might constitutionally assert jurisdiction over" defendant; Court therefore warranted in denying jurisdictional discovery absent plaintiff's specific factual showing of good-faith ground for jurisdiction).

a basis for the exercise of subject-matter jurisdiction over his claims, and those claims should be dismissed in their entirety, with prejudice.

**A.    The ATS Does Not Confer Subject-Matter Jurisdiction Over Claims Of Torture Or Arbitrary Imprisonment By Non-State Actors.**

Plaintiff does not allege that defendant was anything other than a private person at the time of the torts alleged. See Complaint ¶¶ 2, 4-9 (defendant merely candidate for office in 1992). Because plaintiff does not allege that defendant was a state actor, the ATS affords no subject-matter jurisdiction over his claims, either for torture or "arbitrary imprisonment." See Sosa, 542 U.S. at 736, 124 S.Ct. at 2768 (no binding customary norm against "arbitrary detention[,] defined as officially sanctioned action exceeding positive authorization to detain," hence no claim under ATS for arbitrary detention (internal quotation omitted)); Tel-Oren, 726 F.2d at 791-95 (because no international consensus private actors bound by law of nations regarding torture, ATS provides no jurisdiction over claims for torture committed by private actors); Sanchez-Espinoza v. Reagan, 770 F.2d 202, 205-07 (D.C. Cir. 1985) (same); Ibrahim v. Titan Corp., 391 F.Supp.2d 10, 13-15 (D.D.C. 2005) (Robertson, J.) (same).[5]

---

[5]    In fact, defendant at the time of the events complained of was an Assemblyman in Pusan, South Korea. According to plaintiff's own allegations, however, the *only* act by defendant complained of, however, (defendant's allegedly false statement to prosecutors, which commenced the defamation action against plaintiff in 1992, see Complaint ¶ 12 and Points II and V, infra) was taken by defendant entirely in his private capacity, seeking redress for libelous statements made regarding his private life and, again by plaintiff's own allegations, without any apparent cooperation or complicity with any state actor. Thus, defendant did not act in any official capacity or under color of law, for purposes of ATS subject-matter jurisdiction, in bringing a libel complaint against plaintiff. For the reasons stated below, he may not be deemed to be a *de facto* state actor on that thin reed alone. See, e.g., Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 186 (1980) (under analogous state-actor jurisprudence of 42 U.S.C. § 1983, "merely resorting to the courts . . . does not make a party a co-conspirator or a joint actor with the judge"); Latuszkin v. City of Chicago, 250 F.3d 502 (7th Cir. 2001) (acts taken wholly in private capacity, without participation by state actors, not taken "under color of law").

Moreover, plaintiff has alleged no facts whatsoever from which the Court might infer that defendant was a *de facto* state actor, to whom the strictures of the law of nations might apply. See Bao Ge v. Li Peng, 201 F.Supp.2d 14, 20-22 (D.D.C. 2000), aff'd sub nom Bao v. Li, 35 Fed.Appx. 1 (D.C. Cir. Mar 01, 2002). In Bao Ge, the Court held that, for a private actor to be deemed a *de facto* state actor, there must be "a substantial degree of cooperative action between the state and [the] private actor[.]" See id. at 22 (citing Doe v. Unocal Corp., 963 F.Supp. 880 (C.D. Cal. 1997). The Bao Ge Court compared the allegations of cooperative action in that case to the substantial allegations of cooperative action in Unocal and Iwanowa v. Ford Motor Co., 67 F.Supp.2d 424 (D.N.J. 1999) and held that the private-actor defendant in Bao Ge could not be deemed a *de facto* state actor on the meager facts alleged. Here, plaintiff offers even less than did plaintiffs in Bao Ge. Indeed, plaintiff here alleges *no* cooperative action of any kind or degree between and among defendant and the prosecutorial officials who allegedly abused plaintiff. Compare Complaint ¶¶ 5-12 with Bao Ge, 201 F.Supp.2d at 22 (reciting extensive allegations of cooperative action in Unocal and Iwanowa); see also Beanal v. Freeport McMoRan, Inc., 197 F.3d 161, 165 (5th Cir. 1999) (Complaint "devoid of names, dates, locations, times or any facts that would put [defendant] on notice as to what conduct" supported claims for private actor liability).[6] Accordingly, defendant may not be deemed a *de facto* state actor for purposes of invoking subject-matter jurisdiction under the ATS. And, since the ATS provides no subject-matter jurisdiction over claims of torture or "arbitrary imprisonment" when

_____

[6]    See also Doe v. Exxon Mobil Corp., 393 F.Supp.2d 20, 25-27 (D.D.C. 2006) (determination whether individual may be deemed *de facto* state actor under ATS cannot proceed under "color of law" jurisprudence of 42 U.S.C. § 1983, as opposed to analysis of degree of actual cooperative action; nevertheless, "plaintiffs do not sufficiently allege that defendants participated in or influenced the [State] actions that allegedly caused the human rights violations").

such wrongdoing is alleged to have been committed by a non-state actor, plaintiff's claims for torture and "arbitrary imprisonment" under the ATS must be dismissed.

### B.    Plaintiff May Not Assert A Claim For "Arbitrary Imprisonment" Under The ATS.

As the Supreme Court in <u>Sosa</u> held, there is no binding customary norm against "arbitrary detention[,] defined as officially sanctioned action exceeding positive authorization to detain," and hence no claim under the ATS for such arbitrary detention. <u>See Sosa</u>, 542 U.S. at 736, 124 S.Ct. at 2768. As a result, plaintiff is categorically barred from stating a claim for a single instance of arbitrary detention under the ATS. <u>See id.</u>; <u>see also Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1247 (11th Cir. 2005) (same); <u>Exxon Mobil</u>, 393 F.Supp.2d at 25 (after <u>Sosa</u>, claims for individual instance of arbitrary detention categorically non-cognizable as violations of law of nations under ATS; only claims for "state policy [that] practices, encourages, or condones . . . prolonged arbitrary detention" cognizable).

Furthermore, because the detention of plaintiff was not at all arbitrary but incident to lawful process, plaintiff may not state a claim for that detention. <u>See, e.g., Martinez v. City of Los Angeles</u>, 141 F.3d 1373, 1384 (9th Cir. 1998) (under ATS detention of plaintiff not "arbitrary" under law of nations because, although resulting from false accusation and misconduct of police, detention effected pursuant to legal process and plaintiff received due process) (<u>citing</u> Restatement (Third) of the Foreign Relations Law of the United States § 702 cmt. h (1987) (detention arbitrary "if it is not pursuant to law . . . . [if] it is not accompanied by notice of charges; if the person detained is not given early opportunity to communicate with family or to consult counsel; or is not brought to trial within a reasonable time.")). Thus, regardless of the truth or falsity of plaintiff's allegation that defendant made a false statement to

authorities that, in turn, caused his detention, that detention was not "arbitrary" under the law of nations, and, once more, plaintiff's claims for "arbitrary imprisonment" must be dismissed.

### C.  Plaintiff Has Not Sufficiently Alleged Torture To Invoke Subject-Matter Jurisdiction Under The ATS And The TVPA.

To be clear, defendant unreservedly condemns the sort of abuse that plaintiff alleges.  Nevertheless, to invoke the subject-matter jurisdiction of the ATS to assert a cause under the TVPA, plaintiff must allege abuse by a state actor amounting to "torture," as defined by the statute itself.  Without in any way diminishing the seriousness of the conduct alleged, defendant respectfully submits that plaintiff has not alleged torture as a matter of law.

The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  In Sosa v. Alvarez-Machain, 542 U.S. 692, 712, 124 S.Ct 2739, 159 L.Ed.2d 718 (2004), the Supreme Court held that the ATS is a jurisdictional statute that does not itself create a cause of action; to state a cause of action and invoke the jurisdiction of the ATS, aliens must look to the law of nations.  Sosa, 542 U.S. at 714.  Plaintiff necessarily relies upon the proposition that torture is violative of the law of nations, at least when perpetrated by state actors.  Indeed, that is the law of this Circuit.  See e.g. Tel-Oren v. Libyan Arab Republic 726 F.2d 774, 781 (D.C. Cir. 1984) (torture by state actors violation of customary international law). Therefore, to call upon the ATS' grant of subject-matter jurisdiction in support of his claim for torture, plaintiff must, in fact, allege torture.  While plaintiff does allege grave abuses of police power, however, those alleged abuses do not rise to the level of "torture," as is necessary to provide subject-matter jurisdiction under the ATS (and a cause of action under the TVPA, see Point V, infra).

The TVPA provides, in relevant part, as follows:

**(b) Torture.** --For the purposes of this Act—

**(1)** the term "torture" means any act, directed against an individual in the offender's custody or physical control, by which severe pain or suffering (other than pain or suffering arising only from or inherent in, or incidental to, lawful sanctions), whether physical or mental, is intentionally inflicted on that individual for such purposes as obtaining from that individual or a third person information or a confession, punishing that individual for an act that individual or a third person has committed or is suspected of having committed, intimidating or coercing that individual or a third person, or for any reason based on discrimination of any kind; and

**(2)** mental pain or suffering refers to prolonged mental harm caused by or resulting from—

> **(A)** the intentional infliction or threatened infliction of severe physical pain or suffering;

> **(B)** the administration or application, or threatened administration or application, of mind altering substances or other procedures calculated to disrupt profoundly the senses or the personality;

> **(C)** the threat of imminent death; or

> **(D)** the threat that another individual will imminently be subjected to death, severe physical pain or suffering, or the administration or application of mind altering substances or other procedures calculated to disrupt profoundly the senses or personality.

The TVPA also carries out the intent of Congress' ratification of the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT") (available at http://www.unhchr.ch/html/menu3/b/h_cat39.htm), and the TVPA's definition of "torture" is drawn therefrom.[7]  See Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82, 92 (D.C. Cir. 2002).  Since the enactment of the TVPA, several cases have reviewed

---

[7]    The U.S. Senate ratified the CAT on October 27, 1990.

allegations of abuse similar to those lodged here and found them insufficient to state "torture" within the meaning of the TVPA and CAT. See Price, 294 F.3d at 91-94; Doe v. Qi, 349 F.Supp.2d 1258 (N.D. Cal. 2004).

   In Price, plaintiffs brought a claim for torture under the 1996 Flatow Amendment to the Foreign Sovereign Immunities Act, asserting that they had been "kicked, clubbed, and beaten" and subjected to "physical, mental and verbal abuse" by prison guards in Libya during a 105-day detention in deplorable conditions. See Price, 294 F.3d at 86. The Court proceeded to determine whether plaintiffs had in fact alleged "torture" by reference to the definition of the term in the TVPA and CAT. See id. at 91-94. As the Court noted, to constitute "torture" under the TVPA, the alleged acts must inflict "severe" pain or suffering. Id. "The severity requirement is crucial to ensuring that the conduct proscribed by the convention and the TVPA is sufficiently extreme and outrageous to warrant the universal condemnation that the term 'torture' both connotes and invokes." Id. at 92 (citations omitted). "[T]he term is usually reserved for extreme, deliberate, and unusually cruel practices, for example, sustained systematic beating, application of electric currents to sensitive parts of the body, and tying up or hanging in positions that cause extreme pain." Id. at 92-93. "Accordingly, not all *police* brutality, not every instance of excessive force used against prisoners, is 'torture' under the TVPA." Id. at 93 (emphasis in original). The Court then reviewed plaintiff's allegations that they had been "kicked, clubbed, and beaten" by defendant Libya's agents, and concluded that "the facts pleaded do not reasonably support a finding that the physical abuse allegedly inflicted . . . evinced the degree of cruelty necessary to reach a level of torture," and affirmed the District Court's dismissal of plaintiffs' claims. Id. at 94.

In Qi, plaintiffs -- Falun Gong practitioners -- brought suit against local Chinese government officials under the ATS and TVPA for treatment they received after being detained. The Court in Qi closely followed the reasoning of the D.C. Circuit in Price. See Qi, 349 F.Supp.2d at 1313-14. The Court also proceeded to review other cases defining the extent of what constitutes torture under the CAT (from which, as noted above, the definition of "torture" under the TVPA is drawn). One such case, with facts strikingly similar to those at bar, is Wang v. Ashcroft, 320 F.3d 130 (2d Cir. 2003). Plaintiff in Wang argued that his removal to China would violate the CAT. He specifically alleged that he would be subjected to torture if sent back to China as a military deserter, because after a previous desertion attempt he was captured and beaten. See Wang, 320 F.3d at 136, 144. Although the case turned on whether or not plaintiff had shown a likelihood of further abuse if returned, the Court referred to the alleged abuse of plaintiff, not as the "sustained, systematic beating" that might constitute "torture," but as "a deviant practice carried out by one rogue military official." Id. at 144. Similarly, plaintiff's allegation here, that he was beaten over the course of several hours during a prosecutorial interrogation, might state "a deviant practice carried out by one rogue . . . official," but does not rise to the level of "torture" under the TVPA.

Kumar v. Gonzales, 435 F.3d 1019 (9th Cir. 2006) is also illuminating, as the Qi Court found. In Kumar, petitioner appealed the denial of his applications for asylum, withholding of removal, and relief under the CAT. Plaintiff alleged that he and his brother were taken to a police station in India where, *over the course of one month*, they were severely beaten with wooden sticks and leather belts by officers threatening to kill them. Id. at 1022-23. In deciding Kumar's petition for asylum, the Immigration Judge ruled -- and the Ninth Circuit affirmed -- that the abuse he claimed to have suffered did not rise to the level of "torture" as

defined by the CAT.  Id. at 1031.  Certainly, if the allegations in Kumar of sustained beatings and threats over the course of a full month did not rise to the level of "torture," plaintiff's allegations here do not amount to the "sustained, systematic beating" that may constitute "torture" under the TVPA.  In this connection, during its analysis of cases alleging torture, the Qi Court succinctly stated:

> While the precise contours of "torture" under the TVPA may be ill-defined, the statutory and regulatory definitions expressed in the TVPA, CAT and FARRA, together with the interpretive case law discussed above, make clear that while a single instance of "garden variety" excessive force may not constitute torture, sustained systematic beatings or use of particularly heinous acts such as electrical shock or other weapons or methods designed to inflict agony does constitute torture.

Qi, 349 F.Supp.2d at 1317.

The abuse alleged by plaintiff, while serious, plainly is less sustained and systematic than the abuses alleged in Qi, Wang, and Kumar.  In fact, the abuse alleged by plaintiff, offensive as it is, is exactly the type of "excessive force" or "police brutality" that fails to rise to the level of "torture" under applicable law.  See id., 349 F.Supp.2d at 1315, 1317.[8]

---

[8]    Additionally, the policies underlying the modern ATS and the TVPA counsel against extending their reach to conduct such as that alleged by plaintiff here.  The Supreme Court ruled in Sosa that new claims could be recognized to exist as the law of nations might develop them, but that any such new claims must "rest on a norm of international character accepted by the civilized world and defined with specificity."  Sosa, 542 U.S. at 725.  To allow the use of these two statutes to open up federal Courts to any allegation of mistreatment at the hands of the police or state actors of other countries would not only burden the Courts greatly but would also dilute the utility of the ATS and TVPA themselves to those who have suffered the sorts of gross, universally-recognized crimes against humanity contemplated by the Supreme Court in Sosa.

Therefore, without an allegation of "torture," plaintiff cannot state a violation of the law of nations or TVPA.[9] This Court thus lacks subject-matter jurisdiction over plaintiff's claim.

### D. Plaintiff, In Fact, Alleges Neither Torture Nor Arbitrary Detention By Defendant, But Malicious Prosecution Instead.

The gravamen of this case is that defendant injured plaintiff by making false statements to prosecutors that led those officials to detain and abuse plaintiff -- in short, that defendant made false statements to authorities and thereby committed the tort of malicious prosecution. The Second Restatement of Torts defines malicious prosecution as follows:

> A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if
>
> > (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and
> >
> > (b) the proceedings have terminated in favor of the accused.

See Restatement of Torts (2nd) § 653 (1977); see also Arce v. Garcia, 400 F.3d 1340, 1343 n.1 (11th Cir. 2005) ("We focus on the gravamen of the plaintiffs' claims and not the different ways in which they are styled."), superseded on other grounds, 434 F.3d 1254 (11th Cir. 2006).

Neither malicious prosecution nor bearing false witness, however, are actionable as violations of the law of nations under the ATS.[10] See Maugein v. Newmont Mining Corp., 298 F.Supp.2d 1124, 1126-27, 1130 (D. Colo. 2004) (corruption of Court proceeding resulting in defamation of plaintiff's character and interference with economic interests "is a tort under

---

[9] Moreover, for an act to constitute torture, it must be taken while the plaintiff was under "the offender's custody or physical control." See 28 U.S.C. § 1350 note § 3(b)(1). Plaintiff here does not allege that he was in any way under the custody or physical control of defendant.

[10] The TVPA provides causes of action for torture and extrajudicial killing; of course, neither malicious prosecution nor false accusations are actionable under either of those two provisions.

American law and, presumably, the domestic laws of many other nations. It is not, however, a subject of the proscriptions of the law of nations" sufficient to make out ATS claim); <u>Eastman Kodak Co. v. Kavlin</u>, 978 F.Supp. 1078, 1092 (S.D. Fla. 1997) ("If [plaintiff] had merely alleged that defendants made false accusations and thereby tricked . . . officials into incarcerating him," ATS likely would not apply; only specific factual allegations showing defendants' concerted action with state actors in knowingly effecting detention allowed claim to survive motion to dismiss); <u>De Wit v. KLM Royal Dutch Airlines, N.V.</u>, 570 F.Supp. 613, 615, 618 (S.D.N.Y. 1983) (successful lawsuit against plaintiff for injunctive relief, and alleged interference with business relationships, no violations of law of nations for ATS purposes); <u>see</u> also, <u>e.g.</u>, <u>Trans-Continental Inv. Corp., S.A. v. Bank of Commonwealth</u>, 500 F.Supp. 565, 570 (C.D. Cal. 1980) (though fraud universally recognized tort, rule against fraud not <i>per se</i> part of law of nations for ATS purposes).

### E.   Plaintiff Has Failed To Allege Facts Showing That Defendant Committed Any Tort In Violation Of The Law Of Nations.

For the several reasons set forth in Point V(D), <u>infra</u>, plaintiff has failed to make allegations of fact showing that defendant committed any tort in violation of the law of nations. Accordingly, the Court lacks subject-matter jurisdiction over plaintiff's claims, and those claims must be dismissed.  <u>See</u>, <u>e.g.</u>, <u>Doe v. Exxon Mobil Corp.</u>, 393 F.Supp.2d 20, 28 (where plaintiff fails to state claim under ATS, Court also lacks subject-matter jurisdiction).

### III

### PLAINTIFF HAS FAILED TO EXHAUST
### AVAILABLE REMEDIES IN SOUTH KOREA.

The TVPA requires that plaintiff exhaust the available remedies in the country

where the alleged violation occurred:

> **(b) Exhaustion of remedies.** -- A court shall decline to hear a
> claim under this section if the claimant has not exhausted adequate
> and available remedies in the place in which the conduct giving
> rise to the claim occurred.

See Pub.L. 102-256, 106 Stat. 73, § 2(b) (1991); see also, e.g., Enahoro v.

Abubakar, 408 F.3d 877 (7th Cir. 2005) (dismissing for failure to exhaust remedies).[11]

A plaintiff in a TVPA action is presumed to have exhausted available remedies in

his home country, and the burden is on defendant to make a showing that those remedies are

available and adequate.  Once that showing is made, the burden reverts to plaintiff and requires

him to make a showing that the remedies identified by defendant would, in fact, be futile.  See S.

Rep. 102-249, 102nd Cong., 1st Sess. 1991, 1991 WL 258662 at *9-10; Collett, 362 F.Supp.2d at

242.

---

[11]    The TVPA also provides for a 10-year limitations period, which is to be tolled while a
defendant is immune from suit under the Foreign Sovereign Immunities Act (as defendant
was during his tenure in office), and which is also applicable to claims under the ATS.  See
TVPA, Pub.L. 102-256, 106 Stat. 73, § 2(c); 28 U.S.C. § 1605(f); Collett v. Socialist
Peoples' Libyan Arab Jamahiriya, 362 F.Supp.2d 230, 242 (D.D.C. 2005).  The acts
complained of here occurred on May 4 and May 6, 1992, some 13 years, 6 months and four
weeks ago.  However, during defendant's five-year tenure in office, from Feb. 25, 1993
through Feb. 25, 1998, the limitations period was tolled.  See S. Rep. 102-249, 102nd Cong.,
1st Sess. 1991, 1991 WL 258662 at *11.  Thus, as of Feb. 25, 1998, when defendant left
office, plaintiff retained approximately nine years and two months in which to bring suit.
The Complaint in this action was filed on December 2, 2005, some seven years, nine months,
and one week later.  Accordingly, as of the date of the commencement of this action,
approximately one year, three months, and one week remained of the limitations period.

Here, there is no doubt that Courts of South Korea are generally competent and fair; indeed, U.S. courts routinely decline to hear cases better heard in South Korea on grounds of *forum non conveniens*. <u>See</u>, <u>e.g.</u>, <u>Honshu Shipping Co., Ltd. v. M/V Trade Zale</u>, 2005 WL 3676097, at *2-6 (N.D. Cal.); <u>LTX Corp. v. Daewoo Corp.</u>, 979 F.Supp. 51, 59-60 (D. Mass. 1997); <u>Fireman's Fund Ins. Co. v. Pan Ocean Bulk Carriers, Ltd.</u>, 559 F.Supp. 527, 527-29 (N.D. Cal. 1983). Additionally, South Korean law explicitly provides civil remedies for the conduct described in the Complaint:

> Any person who causes losses to or inflicts injuries on another person by an unlawful act, willfully or negligently, shall be bound to make compensation for damages arising therefrom.[12]

<u>See</u> Civil Act, Chap. V (Torts), Art. 750.

South Korean law also provides remedies for injuries to a plaintiff's non-economic losses, such as impairment of reputation or mental distress:

> A person who has injured the person, liberty or fame of another or has inflicted any mental anguish to another person shall be liable to make compensation for damages arising therefrom.

<u>See</u> Civil Act, Art. 751(1); <u>See also</u> Sang-Kyu Affidavit ¶ 3.

Moreover, there is no basis for any assertion that the Courts of South Korea would fail to adjudicate plaintiff's claims fairly. The Constitution of the Republic of Korea specifically prohibits torture and coercion. <u>See</u> Constitution of the Republic of Korea, Art. 12(2) ("No citizen shall be tortured or compelled to testify against himself in criminal cases."). South Korean criminal law also specifically and comprehensively prohibits the sorts of conduct alleged (or implied) by plaintiff here. <u>See</u> Criminal Act, Art. 125 (providing criminal penalties,

---

[12]   In South Korea, as in most civil law systems, the civil code provides a blanket cause of action in tort for damages arising from any of the unlawful acts enumerated in the criminal code (and listed <u>infra</u>). <u>See also</u> Civil Procedure Act, Art. 18 (providing jurisdiction and venue for tort claims in court of place where alleged unlawful act committed).

including imprisonment, for commission by police or prosecutor of violent act against criminal

suspect); id. Art. 139 (providing criminal penalties, including imprisonment, for obstruction of

official duties concerning human rights); id. Art. 156 (providing criminal penalties, including

imprisonment, for false criminal accusations); id. Art. 257 (providing criminal penalties,

including imprisonment, for infliction of bodily injury); id. Art. 260 (providing criminal

penalties, including imprisonment, for battery); id. Art. 313 (providing criminal penalties,

including imprisonment, for fraudulent injury to the credit of another); id. Art. 314 (providing

criminal penalties, including imprisonment, for fraudulent or coercive interference with the

business of another); see also id. Art. 30 (providing persons jointly committing crime punished

as co-principals); id. Art. 31 (providing person who instigates another to commit crime punished

as principal).  Recently, South Korea has also established the Commission for the Restoration of

Honor and Compensation to Activists of the Democratization Movement, to review cases in

which political activists may have been tortured by the military regimes preceding President

Kim's tenure in office.  The Commission has reviewed over 9,000 cases since 2000 and

determined that compensation was due in 540 of them.  See United States Dep't of State, 2005

Country Report on Human Rights Practices - Republic of Korea, Sec. 1(c) (located at

http://www.state.gov/g/drl/rls/hrrpt/2005/61613.htm).

Finally, the South Korean Courts have in the past adjudicated numerous

substantial claims against high officials, including former Presidents of the country.  In fact,

defendant himself, during his tenure, advocated and supported the prosecution of cases against

former senior officials accused of corruption, an illegal 1979 coup, and human rights abuses such

as the 1979 Kwangju massacre.  That prosecution resulted in the convictions of two former

presidents of South Korea, among others.  See, e.g., Oberdorfer, at 381-82 (describing how two

former Presidents and fourteen military officers, including eight generals, tried for human rights

abuses).  One commentator has written:

> Kim Young Sam . . . will have his indelible place in history for his
> courage in bringing the former militarists Chun Doo Hwan and
> Roh Tae Woo to trial on sedition and corruption charges (Chun
> was sentenced to die and Roh to a long prison term; both were
> magnanimously pardoned by Kim Dae Jung in early 1998, after
> spending a long period in jail).

Cumings, at 511.

In short, the Courts of South Korea clearly have the legal competence to handle

claims such as plaintiff's.  They have done so before and have the professional integrity to do so

again on the facts alleged (such as they are).  Accordingly, defendant has amply met its burden

of showing that remedies in South Korean Courts are available to plaintiff and would not be

futile.  Absent a specific factual showing by plaintiff to the contrary, plaintiff's TVPA claim

should be dismissed for failure to exhaust those remedies.

The TVPA's exhaustion requirement must also be applied to plaintiff's ATS

claims, just as the TVPA's limitations period is applicable to claims brought under the ATS.  See

Collett, 362 F.Supp.2d at 242 (applying TVPA's limitations period to ATS claim); Enahoro v.

Abubakar, 408 F.3d at 886 (post-Sosa, applying TVPA exhaustion requirement to ATS claims).

The legislative history behind the TVPA's exhaustion requirement supports this, as the goals

enumerated for its inclusion in the TVPA are equally applicable to the ATS:

> The [TVPA] provides that a court shall decline to hear and
> determine a claim if the defendant establishes that the claimant has
> not exhausted adequate and available remedies in the place in
> which the conduct giving rise to the claim occurred. This
> requirement ensures that U.S. courts will not intrude into cases
> more appropriately handled by courts where the alleged torture or
> killing occurred.  It will also avoid exposing U.S. courts to
> unnecessary burdens, and can be expected to encourage the
> development of meaningful remedies in other countries.

H.R. Rep. 102-367(I), 102nd Cong., 1st Sess. 1991, 1991 WL 255964 at *87-88, reprinted at

1992 U.S.C.C.A.N. 84; see also Sosa, 542 U.S. at 733 n.21, 124 S.Ct. at 2766 n.21 (noting

European Commission's argument, as *amicus curiae*, requirement of exhaustion of local

remedies basic principle of international law).  Accordingly, plaintiff's claim under the ATS

should also be dismissed for failure to exhaust available remedies in South Korea.  See, e.g.,

Enahoro, 408 F.3d at 886 (dismissing for failure to exhaust remedies).

IV

## THE COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS.*

The doctrine of *forum non conveniens* applies in undiminished fashion to actions

brought under the ATS and the TVPA.  See, e.g., Wiwa v. Royal Dutch Petroleum Co., 226 F.3d

88, 104-06 (2d Cir. 2000); Aguinda v. Texaco, 303 F.3d 470, 476 (2d Cir. 2002); Sequiha v.

Texaco, 847 F.Supp. 61, 63-65 (S.D. Tex. 1994).  The first step in deciding whether an action

should be dismissed on such grounds is to determine whether an adequate alternative forum

exists.  See, e.g., Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22, 102 S.Ct. 252, 265 n.22

(1981); Gulf Oil v. Gilbert, 330 U.S. 501, 506-07, 67 S.Ct. 839 (1947); El-Fadl v. Central Bank

of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996).  If it does, the Court must then balance the private

interests of the parties and the public interests of the Courts and jurisdictions involved to decide

which of the competing fora is more appropriate for adjudication of the dispute.  See Piper, 454

U.S. at 254 n.22, 102 S.Ct. at 265 n.22; El-Fadl, 75 F.3d at 677.

### A.    South Korea Is An Adequate Alternative Forum.

"Generally, an alternative forum is available if the defendant is subject to service

of process in another jurisdiction. In rare circumstances, a forum that has jurisdiction over the

parties may be deemed inadequate if the only remedies available there are 'clearly

unsatisfactory,' for example because the jurisdiction does not permit litigation of the subject matter of the dispute." See In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980, 540 F. Supp 1141, 1145 (D.D.C. 1982), citing Piper, 454 U.S. at 254 n.22, 102 S.Ct. 252 n.22. An alternative forum is to be deemed adequate if (i) defendant is susceptible to service of process there and (ii) the forum "permits litigation of the subject matter of the dispute." See El-Fadl, 75 F.3d at 677, citing Piper, 454 U.S. at 254 n.22, 102 S.Ct. at 265 n.22.

Defendant is a South Korean national residing openly in Seoul and subject to process in the Civil Court of Seoul. Moreover, as detailed above, South Korean law provides numerous remedies, both civil and criminal, for the conduct alleged by plaintiff. See Point III, supra, at 24-25 (listing provisions of Korean civil and criminal codes barring conduct alleged by plaintiff). Accordingly, the forum available to plaintiff in South Korea is adequate. Moreover, for the reasons described above, there is no basis for plaintiff's conclusory, unsupported assertion that the South Korean Courts would treat his claims unfairly, given their history and general competence and integrity. See, e.g., Aguinda, 142 F.Supp.2d at 543 (arguing different features of civil law systems make systems inadequate "is insulting to those nations and absurd on its face.")

B.    **The Private Interests Of The Parties Favor Adjudication In South Korea.**

The private interests to be considered as part of a *forum non conveniens* analysis include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; . . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." Gilbert, 330 U.S. at 508, 67 S.Ct. at 843. While deference ordinarily is to be accorded to plaintiff's choice of forum, "plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or

'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." See id.

All of these factors militate strongly in favor of adjudication of the instant dispute in South Korea. All of the pertinent evidence and all but one of the relevant witnesses reside in South Korea,[13] making access thereto more convenient in South Korea. The South Korean Courts also provide compulsory process for unwilling witnesses. See Civil Procedure Act, Art. 311 (providing fines for non-appearance when appearance not yet compelled); Art. 312 (providing authorization to compel witness to appear in civil action and criminal penalties for failure to appear when compelled). Moreover, the relief that plaintiff seeks is at least as enforceable in South Korea as the United States. Plaintiff's only objection is his unsupported assertion that his passport was somehow "voided" by South Korean authorities, rendering it impossible for him to travel to South Korea to file suit there. See Complaint ¶ 15. As an initial matter, because plaintiff, like defendant, remains a national of the Republic of Korea, see Complaint at ¶ 1, plaintiff's counsel is free to proceed to seek relief in South Korea without his physical presence there. Furthermore, the Complaint does not explain why or by whom plaintiff's passport was "voided," or whether he has at any time sought a replacement passport and/or a visa to travel to South Korea as might be necessary. Again, given defendant's affirmative showing that South Korean fora are adequate and available to plaintiff, and that those Courts may rightly be expected to adjudicate plaintiff's claims fairly and openly, plaintiff's

---

[13] In particular, all of the persons whom plaintiff alleges were participants in or complicit in his abuse, including the prosecutorial officers whom plaintiff alleges were directly responsible therefor -- but whom plaintiff has chosen not to name as defendants, even as unnamed "Doe" defendants -- presumably reside in South Korea.

unsupported assertion of futility cannot overcome the patent interests of the parties (and as set forth below, the public) in adjudication of these claims in South Korea.

### C.    The Public Interest Favors Adjudication In South Korea.

The public interest factors to be considered in the *forum non conveniens* analysis include congestion of the Courts by superfluous litigation; the interests of the respective fora in having local disputes decided at home; and the interest in having issues of law decided by courts of the nation whose law is involved. See Friends for All Children, Inc. v. Lockheed Aircraft Corp., 717 F.2d 602, 609 (D.C.Cir. 1983), citing Gilbert, 330 U.S. at 508-09. These factors militate even more strongly in favor of adjudication of this dispute in South Korea.

As the Complaint concedes and as the public record clearly shows, defendant was a reformer who ended the previous 33 years of military rule and who himself sought prosecution of his predecessors for human rights abuses and other crimes. If plaintiff can in fact substantiate the assertion that defendant had anything to do with the torture of anyone at all, the people of South Korea deserve to hear plaintiff's case in the Courts of their country. Moreover, the South Korean Courts themselves, which are competent to hear such charges, also deserve the opportunity to adjudicate claims explicitly covered not only by the laws of South Korea but also by its Constitution and so intimately tied up with the recent history of the nation. Finally, of course, dismissal on grounds of *forum non conveniens* would marginally lessen the congestion of this Court's docket and obviate the need for this Court to resolve the gravamen of a 14-year-old

defamation matter far more amenable to adjudication in South Korea.[14]  Finally, dismissal would

avoid the prospect of duplicative litigation, should plaintiff's allegations, now aired, engender a

criminal investigation in South Korea.

Consequently, because the South Korean Courts provide an adequate alternative

forum and both the private interests of the litigants and the public interests of the Courts and

jurisdictions involved tend strongly in favor of adjudication in South Korea, the Complaint

should be dismissed, in its entirety, on grounds of *forum non conveniens*.[15]

**V**

**THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT.**

Plaintiff also has entirely failed to allege facts sufficient to sustain the causes of

action lodged against defendant.  Plaintiff has alleged no facts showing that defendant had any

part in the purported abuse of plaintiff or had any knowledge of such abuse.  Moreover, plaintiff

has thoroughly failed to allege a violation of the law of nations sufficient to state a claim under

the ATS and likewise torture as necessary to state a claim under the TVPA.  Plaintiff's causes,

accordingly, must be dismissed in their entirety.

---

[14]  As noted above, if the Court accepts plaintiff's apparent theory of the case -- that jurisdiction may be had and claims stated under the ATS and TVPA for allegations amounting to malicious prosecution and false statements to prosecutors, see Complaint ¶ 12 -- then this Court, to adjudicate plaintiff's present claims, must resolve the truth or falsity of the statements made by defendant to authorities in South Korea in 1992, as well as the truth or falsity of the assertions made in the article from which defendant's 1992 defamation complaint against plaintiff arose.

[15]  Moreover, plaintiff's decision to bring this action against defendant in this forum -- but not against those who were directly involved in the alleged abuse of plaintiff, even as "Does" -- and style the action as one for torture, in an attempt to call down upon defendant "the universal condemnation that the term 'torture' both connotes and invokes," see Price, 294 F.3d at 92, bespeaks a possible intent to "vex" defendant.  See Saltany v. Reagan, 886 F.2d 438, 400 (D.C. Cir. 1989) (not proper function of Court to serve as forum for protests).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) will be granted, if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).  A Complaint will be construed in the light most favorable to a plaintiff, who will have "the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  All that is required is "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a)(2), sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002) (quoting Conley, 355 U.S. at 47, 78 S.Ct. 99).

At the same time, "it is difficult to imagine uglier or more serious charges than those the plaintiff[ has] leveled at" defendant, and "fairness requires extra-careful scrutiny of plaintiff['s] allegations as to . . . defendant, to ensure that he . . . does indeed have fair notice of what the plaintiff['s] claim and the grounds upon which it rests, and that no inferences are accepted that are unsupported by the facts set out in the" Complaint.  Burnett, 274 F.Supp.2d at 103-04; see also .  For the reasons set forth below, even under the liberal notice pleading standard reiterated in Swierkiewicz, plaintiff has failed to state a claim.  The Complaint, as a result, must be dismissed in its entirety.

**A.**    **Because Plaintiff Does Not Allege That Defendant Was A State Actor At The Time Of The Events Alleged, Plaintiff Cannot State A Claim For Torture Under The ATS.**

Plaintiff does not allege that defendant was anything other than a private person at the time of the torts alleged. See Complaint ¶¶ 2, 4-9 (defendant merely candidate for office in 1992). Because plaintiff does not allege that defendant was a state actor, there is no claim available to plaintiff for either torture or "arbitrary imprisonment" under the ATS. See Sosa, 542 U.S. at 736, 124 S.Ct. at 2768 (no binding customary norm against "arbitrary detention[,] defined as officially sanctioned action exceeding positive authorization to detain," and hence no ATS claim for such arbitrary detention (internal quotation omitted)); Tel-Oren, 726 F.2d at 791-95 (because private actors not bound by law of nations regarding torture, no claim for torture committed by private actors exists under ATS); Sanchez-Espinoza v. Reagan, 770 F.2d 202, 205-07 (D.C. Cir. 1985) (no claim for torture committed by private actors exists under ATS); Ibrahim v. Titan Corp., 391 F.Supp.2d 10, 13-15 (D.D.C. 2005) (Robertson, J.) (same).[16]

Additionally, as set forth in Point II, supra, plaintiff has alleged no facts whatsoever from which the Court might infer that defendant was a *de facto* state actor, to whom the strictures of the law of nations might conceivably apply. See Point II, supra; Bao Ge, 201 F.Supp.2d at 20-22 (D.D.C. 2000), aff'd sub nom Bao v. Li, 35 Fed.Appx. 1 (D.C.Cir. Mar 01, 2002); Beanal, 197 F.3d at 165 (Complaint "devoid of names, dates, locations, times or any facts

---

[16]    Defendant notes again that, for the several reasons stated in Point II, supra, there is no subject-matter jurisdiction over such a claim. Moreover, for the reasons enumerated by the Seventh Circuit in Enahoro v. Abubakar, 408 F.3d at 883-86, defendant submits that the recent decision of the Supreme Court in Sosa confirms the proposition that the ATS provides no subject-matter jurisdiction over such a claim, and that if a claim for torture is to proceed, it must proceed under the TVPA. See id. at 884-85 ("the cause of action Congress provided in the Torture Victim Protection Act is the one which plaintiffs alleging torture or extrajudicial killing must plead."). Nevertheless, in an abundance of caution and for the sake of the completeness of the record, defendant also notes that allegations of torture by a private actor fail to state a claim under the law of nations and ATS.

that would put [defendant] on notice as to what conduct" supported claims for private actor liability).  Accordingly, to the extent that plaintiff's cause for torture relies upon the ATS, the cause must be dismissed.

### B.    Plaintiff's Claim For "Arbitrary Imprisonment" Fails To State A Claim Under The ATS.

For the reasons set forth in Point II(B), supra, plaintiff may state no claim for arbitrary detention under the ATS.  See Sosa, 542 U.S. at 736, 124 S.Ct. at 2768; Aldana, 416 F.3d at 1247; Exxon Mobil, 393 F.Supp.2d at 25 (after Sosa, claims for individual instance of arbitrary detention categorically non-cognizable as violations of law of nations under ATS; only claims for "state policy [that] practices, encourages, or condones . . . prolonged arbitrary detention" cognizable).  Moreover, because by plaintiff's own allegations his detention was not arbitrary at all but incident to lawful process, plaintiff may not state a claim for that detention.  See, e.g., Martinez, 141 F.3d at 1384; Restatement (Third) of the Foreign Relations Law of the United States § 702 cmt. h (1987).  Thus, again, plaintiff's causes for "arbitrary imprisonment" must be dismissed.

### C.    Plaintiff, In Fact, Alleges Neither Torture Nor Arbitrary Detention By Defendant, But Malicious Prosecution Instead.

As noted in Point II(D), supra, plaintiff's allegations in fact state the tort of malicious prosecution.  See Restatement of Torts (2nd) § 653 (1977); Arce, 400 F.3d at 1343 n.1. Allegations of malicious prosecution, however, do not state a claim under either the ATS or TVPA.  See Maugein, 298 F.Supp.2d at 1126-27, 1130; Kavlin, 978 F.Supp. at 1092; De Wit, 570 F.Supp. at 615, 618.  Accordingly, plaintiff's claims, fairly read, must be dismissed.

**D.**      <u>Plaintiff Has Failed To Allege Facts Showing That Defendant Committed Any Tort In Violation Of The Law Of Nations.</u>

**1.**      <u>Plaintiff Has Failed To State A Claim For Torture Under The TVPA</u>.

To state a claim under the TVPA, a plaintiff must show that (i) defendant acted "under actual or apparent authority, or color of law;" (ii) defendant subjected plaintiff to torture; (iii) plaintiff has exhausted "adequate and available remedies;" and (iv) the ten-year statute of limitations has not run. 28 U.S.C. § 1350 note § 2. The latter two elements were discussed in Point II, <u>supra</u>. In the instant case, a sufficient allegation of torture is necessary to make out plaintiff's claim for violation of the TVPA. For the reasons stated in Point II, <u>supra</u>, the allegations of abuse in the Complaint do not amount to "torture" under the TVPA (or under the international agreements from which the TVPA's definition is drawn). Because torture has not been sufficiently alleged, no relief can be granted under the TVPA. Therefore, pursuant to Rule 12(b)(6), plaintiff's claim for torture under the TVPA must be dismissed.

**2.**      <u>Plaintiff's Allegation Of Causation Is Wholly Conclusory And Hence Insufficient To State A Claim For Torture.</u>

To state a claim for torture, plaintiff must make a showing of proximate cause. Plaintiff must establish cause-in-fact as opposed to 'but-for' causation or any other, less stringent theory of causation, <u>i.e.</u>, that the injury complained of is a direct result of defendant's own tortious conduct. <u>See</u> <u>Holmes v. Sec. Investor Prot.ection Corp.</u>, 503 U.S. 258, 268, 112 S.Ct. 1311, 1317 (1992); <u>Kilburn v. Socialist People's Libyan Arab Jamahariya</u>, 376 F.3d 1123, 1128 (D.C. Cir. 2004) (citing <u>Prosser & Keeton on the Law of Torts</u> 263 (5th ed. 1984).

The sole allegation of causation here ("Defendant's false statement to authorities caused Plaintiff's . . . torture by the interrogators," <u>see</u> Complaint ¶ 12) is wholly conclusory and hence insufficient to state proximate causation in support of his claim for torture. <u>See, e.g.</u>, <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944 (1986) ("Although for the purposes

of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Judicial Watch, Inc. v. U.S. Senate, 432 F.3d 359, 360 (D.C. Cir. 2005) (Court may not automatically accept conclusory allegations; Court must examine "whether the specific alleged facts support inferences claimed by plaintiff, including an inference of causation"); Exxon Mobil, 393 F.Supp.2d at 27 (under ATS plaintiffs failed to allege causation when they failed to allege facts showing that defendants controlled alleged tortious state actions); National Wrestling Coaches Ass'n v. U.S. Dept. of Educ., 263 F.Supp.2d 82, 117 (D.D.C. 2003) (conclusory allegations insufficient to state causation); Nix v. Hoke, 139 F.Supp.2d 125, 136 (D.D.C. 2001) (plaintiff's conclusory allegation that false testimony by neighbor, former United States Representative, proximately caused damages insufficient to state claim).  Accordingly, because plaintiff has alleged no facts showing that defendant's commencement of an action for defamation somehow "caused" the abuse alleged (and has alleged no facts showing that defendant caused or participated in the alleged abuse in any other way, see Point V(B)(4), infra), plaintiff's claim for torture must be dismissed.[17]

---

[17]  Additionally, because defendant had no place within the chain of command of the South Korean prosecutor's office, plaintiff may not rely upon the command doctrine to establish causation.  See, e.g., Ford ex rel. v. Garcia, 289 F.3d 1283, 1286-87 (11th Cir. 2002) (to state command doctrine, plaintiff must show defendant had effective command over subordinates, i.e., both "the legal authority and the practical ability to exert control over" subordinates, and defendant knew of torture alleged but failed to take reasonable steps to repress torture).  Plaintiff here makes no allegation that defendant had legal authority and practical control over the Seoul prosecutorial officials who allegedly abused plaintiff, or even that defendant knew that those abuses were being committed.  See Complaint ¶¶ 2-12.

**3.    Plaintiff Does Not Allege Defendant Conspired With
Prosecutorial Officials Or Aided And Abetted The Alleged Abuse.**

Plaintiff might wish for the Court somehow to infer that defendant caused

plaintiff's injuries by conspiring with prosecutorial officials, or by aiding and abetting the

alleged abuse of plaintiff at those officials' hands. See, e.g., Burnett, 274 F.Supp.2d at 100

(plaintiffs may state claims under ATS and/or TVPA for conspiracy to violate law of nations or

statute, or for aiding and abetting such violations); In re Terrorist Attacks on September 11,

2001, 349 F.Supp.2d 765, 826 (S.D.N.Y. 2005) (same) (citing Presbyterian Church of Sudan v.

Talisman Energy, Inc., 244 F.Supp.2d 289, 311 (S.D.N.Y. 2003) (same); but see Exxon Mobil,

393 F.Supp.2d at 24 (after Supreme Court's holding in Sosa, liability under ATS not properly

predicated upon theory of aiding and abetting violation of law of nations).

However, plaintiff here has entirely failed to allege any facts whatsoever that,

taken as true, would be sufficient to support any inference that defendant conspired with or aided

and abetted the alleged actions of prosecutorial officials. See Browning v. Clinton, 292 F.3d

235, 242 (D.C. Cir. 2002) (Court may not accept inferences unsupported by allegations of

complaint); Burnett, 274 F.Supp.2d at 103-04 (same). In the absence of any specific factual

allegation of communications or a course of conduct showing an illicit agreement between

defendant and the prosecutorial officials who allegedly abused plaintiff, the Court may not infer

that defendant conspired to cause plaintiff's abuse. See, e.g., Jungquist v. Sheikh Sultan Bin

Khalifa Al Nahyan, 115 F.3d 1020, 1031 (D.C. Cir. 1997) ("bald speculation" regarding possible

conspiracy and conclusory allegation of conspiracy insufficient); Basil v. Milliken, 1990 WL

45738, *1 (D.C. Cir. 1990) (even under liberal notice pleading standard of Rule 8, conclusory

allegation of conspiracy insufficient to state claim); Meyer v. Reno, 911 F.Supp. 11, 15 (D.D.C.

1996) (dismissing plaintiff's § 1983 claims for failure to state claim, where plaintiff failed to assert factual basis to support conclusion of existing conspiracy).

Similarly, absent specific factual allegation of defendant's knowing and substantial assistance of the alleged wrongdoing at the hands of prosecutorial officials, the Court may not infer that defendant aided or abetted the abuse alleged. See, e.g., Halberstam v. Welch, 705 472 477-78 (D.C. Cir. 1983) (tort claim for aiding and abetting requires knowing and substantial assistance of primary violation); Silverman v. Weil, 662 F.Supp. 1195 (D.D.C. 1987) (conclusory allegation of aiding and abetting insufficient; plaintiff must plead facts giving rise to "strong inference" defendants had knowledge of primary violation, facts showing defendants "substantially participated" in alleged fraud, and specific reference to primary violations allegedly aided or abetted).[18]

In sum, in the absence of any allegations showing how defendant was or is supposed to have had a part in the abuse of plaintiff at the hands of prosecutorial officials, defendant is left with no idea of the basis upon which plaintiff's claims against *him* are grounded. See Beanal, 197 F.3d at 165 (Complaint "devoid of names, dates, locations, times or any facts that would put [defendant] on notice as to what conduct" supported claims for private actor liability). Plaintiff therefore has failed to "give defendant fair notice of what the plaintiff's

---

[18]  Plaintiff does allege that, after the alleged abuse complained of, and after defendant dropped the defamation charge against plaintiff, defendant "caused" officials of the South Korean intelligence agency to pressure plaintiff to settle with defendant, and "caused" South Korean tax authorities to audit plaintiff's business. See Complaint ¶ 11. These allegations, however, are also entirely conclusory and hence insufficient to state even the concerted action that they imply, see Point V(B)(2), supra, much less to support an inference that, months prior, defendant somehow conspired with or aided and abetted other, prosecutorial officials in their abuse of plaintiff. See, e.g., Sullivan-Obst v. Powell, 300 F.Supp.2d 85 (D.D.C. 2004) ("temporal proximity alone is insufficient to prove causation, especially considering the lack of corroborative evidence").

claim is and the grounds upon which it rests," see Swierkiewicz v. Sorema N.A., 534 U.S. at

512, 122 S.Ct. 992, and failed to make any allegation against defendant sufficing to state any of

his claims under the ATS and TVPA. Accordingly, plaintiff's claims must be dismissed in their

entirety.

**VI**

**PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.**

As set forth herein, even taking the allegations of the Complaint as true, plaintiff

has absolutely failed to state his claims against defendant. There is no indication, within or

outside the four corners of the pleadings, that plaintiff will in good faith be able to cure these

manifold defects. Moreover, it is even less likely that plaintiff will exhaust his remedies in South

Korea, and then revert to this Court with substantial, but heretofore unseen, allegations of fact

sufficing both to establish this Court's personal and subject-matter jurisdiction, and state

plaintiff's claims of torture, all within the time left to him under the applicable ten-year

limitations period. Indeed, even if plaintiff were to do so, to invoke the subject-matter

jurisdiction of this Court and state claims under the ATS and TVPA, he would have to proffer

allegations so different from those now made by his Complaint as to constitute entirely different

claims from those at bar. Dismissal of plaintiff's existing claims, therefore, should ensue with

prejudice. See, e.g., Newborn v. Yahoo! Inc., 391 F. Supp. 2d 1814, 191 (D.D.C. 2005)

(denying leave to amend because amendment futile and dismissing case with prejudice).

## CONCLUSION

For all of the foregoing reasons and upon the remainder of the record, defendant

Young Sam Kim respectfully requests that this Court dismiss all claims against him with

prejudice and award such other and further relief as this Court may deem just and proper.

Dated: New York, New York
      April 14, 2006

Respectfully submitted,

SHEPPARD MULLIN RICHTER & HAMPTON LLP


By:_____/s/_____
    James J. McGuire

    30 Rockefeller Plaza
    Suite 2400
    New York, New York  10112
    (212) 332-3800

    Robert M. Disch
    1300 I Street, NW
    Eleventh Floor East
    Washington, D.C.  20005
    (202) 218-0000

    *Attorneys for Defendant*
      *Young Sam Kim*

Sy Kim
Irving Kagan
Tim McCarthy
  Of Counsel