### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

CHUNG MU SON                                    :

       Plaintiff                               :

v.                                                              :   Case No. 05-CV-02318 (JR)

YOUNG SAM KIM                                  :

       Defendant.                            :

-------------------------------------------------------

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, by undersigned counsels, represents the following in opposition to the motion of defendant Young Sam Kim to dismiss the Complaint herein.

### BACKGROUND

Plaintiff Chung Mu Son is a South Korean national and is a lawfully admitted alien resident living in Alexandria, Virginia since 1980. He was the publisher and chief editor of a weekly newspaper called *Han-Mi Times* in Arlington, Virginia, from 1983 to 1989 and a monthly magazine called *Inside the World (*"the magazine") in Seoul, Korea, from 1989 to 1999. He is now a freelance columnist for Korean news magazines.

In 1992, the magazine published an article in its May issue alleging that the government party representative and hopeful presidential candidate, defendant Young Sam Kim, had a hidden daughter who was born out of wedlock.

On or about May 4, 1992, defendant Kim, through his attorney In Che Lee, who was then a member of the National Assembly, filed a complaint with the Seoul Prosecutors' Office, charging plaintiff Son with libel by the defamatory publication. Defendant Son was arrested at about 9 p.m. on the same day in his Seoul office by

prosecutors without an arrest warrant and was taken to a small room secured by iron bars in the Prosecutors' Office building. He was denied any access to his lawyer. He was interrogated throughout the night without sleep; there were three interrogators who tried to coerce a confession to admit that he had published the false story about the illegitimate daughter of the presidential candidate; they hit him and kicked him hard several times on his head, chest, and legs during the interrogation, which lasted until about 5 a.m. the next morning. At this time, plaintiff Son was allowed to use a bathroom to wash blood from his face before he was taken to a Prosecutor's office for further interrogation. Defendant Son is still suffering from the pain in both legs that was inflicted from the torture during the interrogation in May 1992.

At or about 5 p.m. on May 7, 1992, an arrest warrant was issued, and plaintiff Son was locked up without arraignment in a small solitary room. Plaintiff Son was treated as a felony criminal for offending the presidential candidate of the government party; he was watched by guards every hour for twenty-four hours a day; he was handcuffed while waiting for interrogation and during lunch; and a light bulb was always on in his cell, even at night. A few days later, the Prosecutors' Office formally indicted him on a charge of libel.

Plaintiff's mother, Susanna Kim, 72 years old, had been recovering at that time from an illness in a hospital and had been preparing to be discharged to go home soon. On the evening of May 7, 1992, she saw her son in the television news. Her son had been arrested, handcuffed, and taken to the Prosecutors' Office. She was shocked, fell down to the floor, and remained in a coma for two days. She refused to eat in support of her son. Her health conditions worsened and she died on May 29, 1992 in the hospital bed.

On or about June 1, 1992, the Seoul District Criminal Court (Fourth Division) held a trial only for this case and dismissed the case on the ground that the complainant, Young Sam Kim, did not want to punish the defendant and withdrew his charge against the defendant. The entire trial took five minutes, and the only persons who were present at this open courtroom were the presiding judge, the defendant, prosecutors, two lawyers for the defendant, and two foreign correspondents.

On or about June 2, 1992, Chung Mu Son was released after 26 days of imprisonment. He went straight to his mother's morgue and buried his mother on that day. After the funeral of his mother, Chung Mu Son was medically treated for about two to three weeks for his pain and injury caused by the torture during the interrogation.

Soon after the release of Chung Mu Son, Young Sam Kim's aides contacted Chung Mu Son for a retraction of the publication in exchange for a large sum of money. Chung Mu Son refused to accept the offer because of his conscience as a journalist. At least two of the major news media were known to have accepted government advertisements in return for not publishing the story. Officials from the Korean Central Intelligence Agency pressured Chung Mu Son to negotiate and contacted advertisers to stop placing advertisements in the magazine. The Korean Tax Office threatened an audit of the magazine. All of these interferences resulted in financial losses to the magazine during the ensuing five years and extreme emotional distress to Chung Mu Son.

Meanwhile, the story had totally disappeared from mass media, and the general public soon forgot it as a simple defamatory gossip. Under the circumstances, plaintiff Son could not sue the presidential candidate, Young Sam Kim, then the president-elect in December 1992, and the president from March 1993 to March 1998, because he knew

that it would be impossible to win the lawsuit under the presence of the fraud, duress, and concealment of the facts by the most powerful political leader in Korea who practically controlled most of the judicial and legislative activities as well as the executive acts of the Korean government.

Defendant Kim's five-year presidential term ended in 1998, but he is still a powerful politician even though he is now a private citizen residing in Seoul, Korea. Furthermore, he was able to conceal and suppress the facts until March 2005 when a major Korean newspaper disclosed in the March issue of its affiliated *Monthly Chosun* magazine that the biological mother of the illegitimate daughter of defendant Kim spoke out by disclosing in an interview with a journalist that the mother's name is Kyung Sun Lee, and her daughter's name is Kaneko Kaori, who was fathered by former president Young Sam Kim and was born in Seoul on October 16, 1962 (by lunar calendar). The story carried several pictures of the mother and daughter. The story in the *Monthly Chosun* magazine in March 2005 corroborates most of the story published by plaintiff Son in 1992.

The *Monthly Chosun* magazine also reported that the mother of Kaneko Kaori had received support monies from Kee Sup Kim, an assistant director of the Korean CIA, in the total amount of about $2.3 million (Korean Won 2,300,000,000.00) since 1993.

After reading the *Monthly Chosun* magazine story, plaintiff Son believes that he can now sue defendant Young Sam Kim on the basis of the new corroborating discovery of the facts which have been concealed by defendant Kim, thereby not only claiming for damages but also for the recovery of his lost reputation and honor as a journalist in both Korea and Washington, D.C., where he has a number of contacts for news sources.

## SUMMARY OF DEFENDANT'S ARGUMENT

Defendant argues that all claims against defendant should be dismissed, because

(i)     this court lacks personal jurisdiction over defendant ;
(ii)    this court lacks subject-matter jurisdiction over plaintiff's claims;
(iii)   plaintiff has failed to exhaust available remedies in South Korea;
(iv)    the complaint should be dismissed on grounds of *forum non conveniens;*
(v)     the complaint fails to state a claim against defendant; and
(vi)    plaintiff's claims should be dismissed with prejudice.

## PLAINTIFF'S OPPOSING ARGUMENT

I.    THIS COURT HAS PERSONAL JURISDICTION
       OVER DEFENDANT.

For this Court to maintain jurisdiction over a non-resident defendant,

jurisdiction must be proper under the District of Columbia long-arm statute and

consistent with requirements of due process. *United States v. Ferrara,* 54 F.3d 825, 828

(D.C. Cir. 1955); *Crane v. Carr,* 814 F.2d 758, 762 (D.C. Cir. 1987).

Therefore, to establish personal jurisdiction under the District of Columbia long-

arm statute, D.C. Code Section 13-423(a)(4), plaintiff must make a *prima facie* showing

that

(1) plaintiff suffered tortious injury in the District of Columbia;
(2) the injury was caused by the defendant's act or omission both inside and
    outside the District of Columbia; and
(3) the defendant had one of [the following] three enumerated contacts with the
    District of Columbia: Whether the defendant
         (i)     regularly does or solicits business in the District of Columbia, or
         (ii)    derives substantial revenue from goods used or consumed or
                 services rendered in the District of Columbia, or
         (iii)   engages in any other persistent course of conduct here.

See D.C. Code Section 13-423(a)(4); *Trager v. Berrie,* 593 F. Supp. 223, 225 (D.D.C.

1984).

(1) <u>Plaintiff suffered tortious injury in the District of Columbia.</u>

Plaintiff Son has been living in the Washington suburb of Virginia and has worked in both Virginia and Washington, D.C. since 1980. As a journalist, he has maintained a number of contacts with individuals in and out of public services in Washington, D.C. and surrounding Virginia and Maryland. The defendant Kim's charge in 1992 of libel against plaintiff Son and his subsequent imprisonment in Korea damaged plaintiff's reputation not only in Korea but also in Washington, D.C. The pain and physical injury from the interrogatory torture in 1992 required plaintiff Son to be under medical care in Washington, D.C. when he returned to his home in Alexandria, Virginia about two months after his release from the prison.

(2) <u>The injury was caused by the defendant's act.</u>

Defendant Kim caused the injury by his false statement to prosecutors, which led to the defamation action against plaintiff Son and to the torture in 1992. Defendant Kim was the government party's chief representative and the party's presidential candidate, and he was a member of the National Assembly. His attorney In Che Lee was also a member of the National Assembly and his special assistant in the government party. Soon after the release of plaintiff Son, defendant Kim's aides contacted plaintiff Son for a retraction of the publication in exchange for a large sum of money, which plaintiff Son did not accept. Officials from the Korean Central Intelligence Agency pressured plaintiff Son to negotiate and contacted advertisers to stop placing advertisements in the magazine. The Korean Tax Office threatened an audit of the magazine. Even if defendant Kim did not commit the injury by himself, he conspired with the prosecutors, thereby holding himself liable under an accomplice theory.

(3) <u>Defendant had enumerated contacts with the District of Columbia.</u>

The District of Columbia long-arm statute, D.C. Code Section 13-423(a)(4), requires one of three enumerated contacts with the District of Columbia in order to establish personal jurisdiction over a non-resident defendant.

(i) Defendant regularly does or solicits business in the District of Columbia.

Contrary to defendant's assertions, defendant came to the District of Columbia and surrounding Washington metropolitan areas in September 1985 to meet with his political supporters and to solicit political support for his presidential candidacy. Defendant Kim's local supporters raised money from Korean residents and businesses in Washington area, held rallies on September 9, 1985 in soliciting support of defendant Kim's appeal to area Korean voters and voters' family members in Korea. The local supporters maintained contacts with and coordinated their actions with the defendant Kim's campaign organizations in Korea. After the unsuccessful election in 1987, Defendant Kim continued to maintain his contacts with local supporters for his election campaign again in 1992.

(ii) Defendant engages in the persistent course of business in the District of Columbia.

Defendant Kim made numerous visits to the District of Columbia and spoke at rallies and meetings, purposely directing a political appeal to Korean-American residents of this District and surrounding Virginia and Maryland.

During his entire political career over a period of decades, defendant Kim visited Washington, D.C. many times to meet with his American friends and political supporters for the purpose of enhancing his leadership position in Korea.

Defendant Kim is now Honorary Chairman of the Committee for Democratization of North Korea (Chairman is Mr. Jang Yup Hwang, who was a former high-ranking North Korean government official who defected to South Korea.), which has a branch office in Washington, D.C.

Accordingly, defendant Kim has engaged in the persistent course of political business in the District of Columbia.

Rev. Moon Park, a pastor of a Korean church in the metropolitan area, was active over many years with those locally based activities and cooperated with defendant Kim when he visited the District of Columbia and spoke at rallies. He will be available to testify at a hearing on defendant's motion to dismiss.

(4) Due Process: Defendant has sufficient minimum contact with
the District of Columbia to justify personal jurisdiction.

Justice Ginsburg in *Crane v. Carr* has described the above mentioned enumerated contacts as the "plus factors," that demonstrate some "reasonable connection" between the jurisdiction "separate from and in addition to" the injury caused in the jurisdiction. *Crane v. Carr,* 814 F.2d 758, 762 (D.C. Cir. 1987). The "plus factor or factors" need not be related to the act that caused the injury; all that is required is 'some other reasonable connection' between the defendant and the forum." *Id.* at 762-63. The "plus factor" does not itself provide the basis for jurisdiction "but it does serve to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliation with the forum." *Id.* at 763.

The specific facts alleged above by plaintiff Son indicate that defendant Kim purposefully directed his activities in a substantial way to the District of Columbia, such that they should "reasonably anticipate being haled into court" under the District of

8

Columbia long-arm statute. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474-75

(1985). That test is sufficiently met under due process because there are sufficient "plus

factors" to constitute the requisite minimum contacts.

    II.    <u>THIS COURT HAS SUBJECT-MATTER JURISDICTION<br>OVER PLAINTIFF'S CLAIMS.</u>

        The elements of a claim under the Alien Tort Claims Act ("ATS") are that

(i) plaintiff is an alien; (ii) the claim is one in tort; and (iii) the tort is committed in

violation of the law of nations or a treaty of the United States. <u>See</u> *Bao Ge v. Li Peng,*

201 F. Supp.2d 14 (D.D.C. 2000); *Kadic v. Karadzic,* 70 F.3d 232 (2$^d$ Cir. 1995).

    Defendant Kim, through his attorneys, admitted in his motion to dismiss, that

"the first two elements of an ATS claim are satisfied here." <u>See</u> Motion to Dismiss, p. 12,

paragraph 3. Therefore, the only issue to satisfy subject-matter jurisdiction under the ATS

is that the tort is committed in violation of the law of nations or a treaty of the United

States.

    A.    <u>The ATS Confers Subject-Matter Jurisdiction Over Claims of<br>Torture Or Arbitrary Imprisonment By State Actors.</u>

        Defendant Kim was a member of the National Assembly and therefore, a

state actor.

    Even though defendant Kim was a private actor, he was a *de facto* state actor,

because there was "a substantial degree of cooperative action between the state and [the]

private actor[.]" See *Bao Ge v. Li Peng,* 201 F. Supp. 2d 14, 20-22 (D.D.C. 2000).

Defendant Kim caused the injury by his false statement to prosecutors, which led to the

defamation action against plaintiff Son and to the torture in 1992. Defendant Kim was the

government party's chief representative and the party's presidential candidate, and he

was a member of the National Assembly. His attorney In Che Lee was also a member of

the National Assembly and his special assistant in the government party. Soon after the

release of plaintiff Son, defendant Kim's aides contacted plaintiff Son for a retraction of

the publication in exchange for a large sum of money, which plaintiff Son did not accept.

Officials from the Korean Central Intelligence Agency pressured plaintiff Son to

negotiate and contacted advertisers to stop placing advertisements in the magazine. The

Korean Tax Office threatened an audit of the magazine. All of his collaborators were

state actors.  There was a substantial degree of cooperative action between the state and

defendant Kim.

Accordingly, defendant Kim was either a state actor or a *de facto* state actor,

thereby satisfying subject-matter jurisdiction over claims of torture or arbitrary

imprisonment.

B.     Plaintiff Asserts A Claim For Arbitrary Imprisonment Under ATS.

Defendant Kim filed a false libel charge with the Prosecutors' Office on or

about May 4, 1992, and plaintiff was arrested at about 9 p.m. on the same day. The arrest

was hurriedly made without a prosecutors' usual interview with the complainant. An

arrest warrant was issued on May 7, 1992 but plaintiff was locked up without

arraignment for a few more days until the Prosecutors' Office formally indicted him.

Defendant stated in his motion to dismiss that "[a]s the Supreme Court in Sosa

held, there is no binding customary norm against 'arbitrary detention'… and hence no

claim under the ATS for such arbitrary detention. See Motion to Dismiss, p. 15,

paragraph 2.

However, what the Supreme Court held was that "a single illegal detention of less

than a day, followed by the transfer of custody to lawful authorities and a prompt

arraignment, violate no norm of customary international law so well defined as to support

the creation of a federal remedy" under ATS. See *Sosa v. Alvarez-Machain,* 542 U.S.

692, 738.

Plaintiff was detained not for "less than a day", but for a few days without an

arrest warrant or arraignment until he was formally charged and was kept in prison. This

is a clear violation of an "arbitrary arrest or detention" within the meaning of the

Universal Declaration of Human Rights (Declaration), G. A. Res. 217A (III), U. N. Doc.

A/810 (1948) and article nine of the International Covenant on Civil and Political Rights

(Covenant), Dec. 19, 1996, 999 U. N. T. S. 171. ("No one shall be subject to arbitrary

arrest or detention … anyone who has been the victim of unlawful arrest or detention

shall have an enforceable right to compensation." 999 U. N. T. S., at 175-176). The

United States is a party to both Declaration and Covenant. *Id.* at 734.

Therefore, plaintiff has a claim for arbitrary imprisonment under the ATS.

C.    Plaintiff Has Sufficiently Alleged Torture To Invoke Subject-
      Matter Jurisdiction Under the ATS And The TVPA.

In order to constitute "torture" under the TVPA, the alleged acts must

inflict severe pain or suffering. See *Price v. Socialist People's Libyan Arab Jamahiriaya,*

294 F.3d 82, 91-94 (D. D. C. 2002).

Plaintiff alleged in his complaint that "[interrogators] hit and kicked him hard

scores of times on his head, chest, and legs during the interrogation, which lasted until

about 5:00 a.m. the next morning…. Plaintiff was then allowed to use a bathroom to wash

blood from his face …." Complaint, paragraphs 6-7.  Also, "defendant's tortuous actions

proximately resulted … to [p]laintiff personally during the ensuing five years and in

extreme emotional distress to [p]laintiff."  Complaint, paragraph 12. After his release

from the prison, plaintiff was under medical care for the pain and injury for two to three

weeks.

Therefore, the alleged torture inflicted so severe pain and suffering to plaintiff as

to invoke subject-matter jurisdiction under the ATS and the TVPA.

     D.    <u>Plaintiff Alleges Torture And Arbitrary Imprisonment By Defendant.</u>

For the foregoing reasons and upon the remainder of the records and facts,

plaintiff sufficiently alleges torture and arbitrary imprisonment by defendant.

     E.    <u>Plaintiff Has Alleged Facts Showing That Defendant Committed Torts
In Violation Of The Law Of Nations.</u>

As already shown above, plaintiff has alleged facts showing that defendant

committed torts in violation of the international law, to which the United States is a party.

     III.    <u>PLAINTIFF WAS UNABLE TO EXHAUST AVAILABLE REMEDIES
IN SOUTH KOREA DUE TO EXTRAORDINARY CIRCUMSTANCES
IN SOUTH KOREA.</u>

The TVPA requires that claimants exhaust remedies in the country where

the alleged violation occurred. See Pub.L. 102-256, 106 Stat. 73, Section 2(b) (1991);

1992 U.S.C.C.A.N. at 87.  However, this requirement has not been applied when foreign

courts are inadequate or unacceptable forums. *Cabiri v. Assasie-Gyimah,* 921 F. Supp.

1189, 1197 n.6 (S.D.N.Y. 1996)(courts in Ghana were inadequate); *Mehinovic v.*

*Vuckovic,* 198 F. Supp. 2d 1322, 1347 n.30 (N.D. Ga. 2002)(courts in Serbia and Bosnia

were not avail).

It was impossible for plaintiff to file suit against defendant in Korean court

while he was president of the Republic of Korea from February 1993 to February 1998.

Defendant's control of the judiciary insured that any such suit would be nullified or defeated. Defendant's five-year presidential term ended in 1998, but he is still a powerful politician even though he is now a private citizen residing in Seoul, Korea. South Korean courts may be generally competent and fair, but not in political cases. Prosecutions and trials of political cases are often guided by the presidential office and the ruling party.

As a journalist and an active anti-communism advocate, plaintiff has been highly critical about the South Korean government's "sunshine policy" toward the communistic North Korea since 1998, when Dae Jung Kim took over defendant's presidency and proposed and practiced the sunshine policy. The basic tenet of the sunshine policy is for South Korea to provide the communist North Korea with so much unilateral aid as to maintain peace between the two Koreas. Many South Koreans believe that this policy would only help strengthen the dictatorial regime in North Korea, thereby prolonging an opportunity for reunification of the Korean peninsular. Some  major news media in South Korea have also been critical of the policy. The government and the ruling party oppressed the critical journalists by sending four of them to prison and canceling passports for four others.

In 2003, the same sunshine policy was adopted by the current administration under the leadership of president Mu Hyun No. The government also cancelled passports for four journalists and several other individuals who had been critical of the policy, including plaintiff.  The Korean government voided plaintiff's passport (Passport No. SC0885148) in July 2005 when he applied for renewal at the Korean Embassy in Washington, D.C. The purported reason for the voiding  was two pending criminal charges against plaintiff which plaintiff states were not true and were fabricated by the

Prosecutors' Office in Seoul. Plaintiff protested and the Korean Embassy in Washington, D.C. extended his passport in March 2006. But plaintiff cannot travel to Korea because of fear that his passport may be nullified again by the Korean government to falsely detain him in Korea. Another Korean journalist in Los Angeles who has also been critical of the current government in Korea returned to the United States in April 2006 after having been detained in Korea for about ten months.

As shown above, plaintiff was unable to file a lawsuit against defendant in Korea while he was the president of Korea from 1993 to 1998 because he could not have obtained justice from Korean courts. He was unable to file the suit against defendant in Korea for fear of retaliation from the Korean government for his critics and lack of justice in Korean courts during the president Dae Jung Kim's office term from 1998 to 2003, and during the current government of the president Mu Hyun No from 2003 until present. *Doe v. Saravia,* 348 F. Supp. 2d 1112, 1147 (E.D. Cal. 2004) (plaintiff could not have obtained justice from Salvadoran courts as a result of [p]laintiff's lawyers, and some judges' objective and reasonable fear of retaliation or judicial complicity with the repressive regime).

IV.    DEFENDANT'S MOTION TO DISMISS ON GROUNDS OF
       *FORUM NON CONVENIENS* SHOULD BE DENIED

"As a practical matter, it makes little sense to broach the subject of *forum non conveniens* unless an adequate alternative forum is available to hear the case." *Kamel v. Hill-Rom Co., Inc.,* 108 F. 3d 799, 802 (7th Cir. 1997) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254). In order to dismiss a complaint on grounds of *forum non conveniens,* "[t]his is a two-part inquiry: availability and adequacy." *Id.*  An alternative

forum is available if all parties are "amenable to process and are within the forum's jurisdiction." *Id.* at 803.  An alternative forum is adequate "when the parties will not be deprived of all remedies or treated unfairly." *Id.* (citing *Piper,* 454 U.S. at 255).

In this case, an alternative forum is not available because plaintiff is a resident in the United States and defendant is a resident in Korea. An alternative forum is not adequate because plaintiff will be deprived of all remedies or treated unfairly in Korea. Plaintiff has been highly critical of the "sunshine policy" of the current administration of the Korean government, and therefore, he is subject to the Korean government's scheme to oppress his criticism and to detain him in Korea. Once plaintiff visits Korea, he may be detained there by the Korean authorities.

Accordingly, the South Korean courts are not available because all parties are not amenable to process and are not within the forum's jurisdiction.  The South Korean courts are not adequate because plaintiff will be deprived of all remedies or treated unfairly. Therefore, defendant's motion to dismiss the complaint should be denied.

## V.        THE COMPLAINT STATES A CLAIM  AGAINST DEFENDANT.

Plaintiff has sufficiently alleged that defendant was a state actor or a *de facto* state actor at the time of the events alleged, and plaintiff has properly stated a claim for torture under the ATS, as shown above.

Plaintiff has properly claimed for "arbitrary imprisonment" to state a claim under the ATS, as shown above.

Plaintiff has alleged that defendant was directly or proximately liable for torture and arbitrary imprisonment, as shown above.

Plaintiff has alleged specific acts showing that defendant committed tort in

violation of the law of nations.

Plaintiff has sufficiently alleged and stated a claim for torture against defendant, as shown above.

Plaintiff has alleged that defendant conspired with prosecutorial officials and aided and abetted the alleged abuse, as shown above.

## **CONCLUSION**

For all of the foregoing reasons, plaintiff Chung Mu Son respectfully requests that this Court deny defendant's motion to dismiss the complaint.

Dated:  Washington, D.C.
              May 8, 2006


                                        Respectfully submitted,


                                        /s/ Robert  Ackerman_____
                                        Robert A. Ackerman  37200
                                        1250 Fourth Street, S.W., No. 504W
                                        Washington, D.C. 20024
                                        Tel: (202) 554-2908
                                        E-mail: robertaackerman@earthlink.net
                                        Attorney for Plaintiff

                                        /s/ Chang H. Lie_____
                                        Chang H. Lie  4861212
                                        2121 K Street, N.W., Suite 800
                                        Washington, D.C. 20037
                                        Tel: (202) 246-0300
                                        E-mail: chlie@msn.com
                                        Attorney for Plaintiff

**<u>Certificate of Service</u>**

I certify that on the 8th day of May, 2006, I served by first class mail a copy of the foregoing to Robert M. Disch, 1300 L Street, N.W., Eleventh Floor East, Washington, D.C. 20005.


/s/ Robert A. Ackerman
Robert A. Ackerman