**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
------------------------------------------------------x
                                            :
CHUNG MU SON,                               :
                                            :
                        Plaintiff,          :     Case No. 1:05 CV 2318 (JR)
                                            :
            v.                              :     ECF Case
                                            :
YOUNG SAM KIM,                              :
                                            :
                        Defendant.          :
                                            :
------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OF DEFENDANT YOUNG SAM KIM


SHEPPARD MULLIN RICHTER & HAMPTON LLP

30 Rockefeller Plaza
Suite 2400
New York, New York  10112
(212) 332-3800

1300 I Street, NW
Eleventh Floor East
Washington, D.C.  20005
(202) 218-0000

*Attorneys for Defendant*
 *Young Sam Kim*

## INTRODUCTION

Defendant Young Sam Kim respectfully submits this Reply Memorandum of Law in further support of his motion to dismiss the Complaint against him. For the reasons stated herein and in the remainder of the record, this motion is meritorious and should be granted.

## PRELIMINARY STATEMENT

In his Opposition to Defendant's Motion to Dismiss ("Opposition" or "Opp."), plaintiff ignores most of the argument -- and most of the controlling authority -- set forth in defendant's moving Memorandum of Law ("Initial Memorandum" or "Init. Mem."). For instance, plaintiff completely disregards the law establishing that his case sounds in malicious prosecution, not arbitrary detention or torture. The Court therefore may deem that proposition to be conceded, and may dismiss the Complaint on that basis alone. See, e.g., Hooker-Robinson v. Rice, 2006 WL 508343, at *3 (D.D.C. Mar. 1, 2006) (where plaintiff does not rebut an argument made in support of motion of dismiss, the Court may deem that point conceded); Bancoult v. McNamara, 227 F.Supp.2d 144, 149 (D.D.C. 2002) (if plaintiff "fails to address certain arguments made by the moving party, the court may treat those arguments as conceded, even when the result is dismissal of the entire case"); Init. Mem. at 21-22.

Plaintiff also ignores the voluminous controlling law cited in defendant's Initial Memorandum regarding other points, establishing, *inter alia*, that:

- an injury in this District (not merely continuing damages) is necessary to establish personal jurisdiction under the District of Columbia long-arm statute;

- after the Supreme Court's holding in Sosa v. Alvarez-Machain, 542 U.S. 692, 124 S.Ct. 2739 (2004), no cause of action may lie for arbitrary detention unless plaintiff was detained pursuant to a state policy practicing or condoning prolonged arbitrary detention;

- police brutality of the sort alleged by plaintiff does not state a claim for torture;

- defendant may not be deemed a *de facto* state actor merely because he commenced an action against plaintiff in a South Korean Court;

- plaintiff's bald statement, in his Opposition, that the Courts of South Korea would "deprive[ him] of all remedies or treat[ him] unfairly," <u>see</u> Opp. at 15, is insufficient to excuse his failure to exhaust remedies or to warrant trial of his case in this forum, and certainly cannot overcome defendant's substantial showing to the contrary;

- conclusory allegations, of a tort itself or putative conspiracy, are insufficient to establish jurisdiction or to state a claim; and

- where amendment of the Complaint would be futile, dismissal should be entered with prejudice.

These concessions are also fatal to plaintiff's claims, and no further elaboration is necessary to warrant dismissal. <u>See, e.g.</u>, <u>Bancoult</u>, 227 F.Supp.2d at 149; <u>Stephenson v. Cox</u>, 223 F.Supp.2d 119, 122 (D.D.C. 2002) (dismissing; plaintiff may not expect Court "to act as an advocate for plaintiff and construct legal arguments on his behalf in order to counter those in the motion to dismiss").

Instead of engaging the law applicable to his claims, plaintiff's Opposition belatedly attempts to remedy the multiple fatal defects of his Complaint by offering up additional assertions of fact that are nowhere to be found in the Complaint itself. <u>See, e.g.</u>, Opp. at 6 (asserting that plaintiff required "about two months" of medical care upon return to District of Columbia); <u>id</u>. (asserting that "[e]ven if defendant Kim did not commit the injury by himself, he conspired with the prosecutors"); <u>id</u>. at 7-8 (asserting that defendant visited the District in 1985, and "is now the Honorary Chairman of the Committee for the Democratization of North Korea ... which has a branch office in Washington, D.C."); <u>id</u>. at 13 (admitting that plaintiff does hold a South Korean passport and fears traveling to South Korea because of "two pending criminal charges against plaintiff which plaintiff states were not true and were fabricated by the Prosecutors' Office in Seoul"). Of course, it is improper for plaintiff to attempt to amend his Complaint by his brief in opposition, and the Court therefore may not consider these putative

amendments upon the instant motion.  See Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv., 297 F.Supp.2d 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss."); Doe v. Israel, 400 F. Supp. 2d 86, 100 (D.D.C. 2005) (same; dismissing ATS claims).

Moreover, even if these additional assertions *had* been contained in the Complaint, that pleading still would thoroughly fail to establish this Court's jurisdiction or to state a claim.  As set forth in detail infra, an allegation that plaintiff required medical care after returning to the District of Columbia, for instance, would not vitiate the allegation -- plainly stated in the Complaint -- that plaintiff was *injured* in South Korea, and hence could not salvage his failed assertion of personal jurisdiction.  Similarly, neither an allegation that defendant visited the District of Columbia 21 years ago, nor an allegation that defendant held an honorary office with a charitable organization with an office in the District, would suffice to establish personal jurisdiction.  Furthermore, as the law of this Circuit establishes, an allegation that, "even if defendant Kim did not commit the injury by himself, he conspired with the prosecutors," would be wholly conclusory and hence insufficient to state conspiracy.  And finally, plaintiff's admission that he does indeed hold a South Korean passport, and wishes to proceed here because of "two pending criminal charges . . . which plaintiff states were not true and were fabricated by" prosecutors in South Korea, is enough in itself to require dismissal on grounds of failure to exhaust remedies and *forum non conveniens*.

Indeed, plaintiff's Opposition itself makes clear that, at bottom, this action is one for malicious prosecution, and has been brought against defendant (but not those who allegedly abused plaintiff) in order to protest the policies of the South Korean government and to 'vex' defendant.  See Opp. at 4 ("[P]laintiff Son believes that he can now sue defendant Young Sam Kim on the basis of the new corroborating discovery," which 'discovery' has nothing to do with

whether or not plaintiff was tortured, but rather with the truth or falsity of defendant's 1992 claim of defamation); id. at 13 (decrying policies of South Korean government toward North Korea); Saltany v. Reagan, 886 F.2d 438, 400 (D.C. Cir. 1989).

In sum, plaintiff's Opposition offers no reason to deny the instant motion, and in fact substantially enhances defendant's arguments in support thereof. Accordingly, defendant Young Sam Kim respectfully requests that the Court promptly dismiss plaintiff's claims in their entirety, with prejudice.

## ARGUMENT

## I

## THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT.

Plaintiff bears the burden of establishing personal jurisdiction over defendant. See, e.g., Reuber v. United States, 787 F.2d 599, 599 (D.C. Cir. 1986). As discussed in defendant's Initial Memorandum, the Complaint falls woefully short of asserting any allegations sufficient to establish this Court's personal jurisdiction over defendant. In an attempt to cure this fatal defect, plaintiff has belatedly and improperly attempted to amend his Complaint by making new assertions regarding jurisdiction in his Opposition. Even assuming arguendo, however, that those assertions could properly be considered upon this motion, plaintiff's attempt to establish jurisdiction over defendant would remain facially deficient, because plaintiff has failed to allege any contacts between defendant and the District of Columbia or the United States sufficient to justify haling him into Court here. Accordingly, the Complaint must be dismissed for failure to establish personal jurisdiction.

### A.    There Is No General Jurisdiction Over Defendant.

Plaintiff does not dispute, and therefore concedes, that none of the allegations made in his Complaint amounts to the "continuous and systematic" contacts with the District of

Columbia or the United States that could establish general personal jurisdiction over defendant. See Init. Mem. at 8-9; see also Doe v. Israel, 400 F.Supp.2d at 108 ("To the contrary, the complaint establishes that the . . . defendants live abroad, acted abroad, and are employed abroad."). Thus, this Court cannot exercise general jurisdiction over defendant, and "if personal jurisdiction exists here at all, it must exist based on specific contacts." Id.

### B.    There Is No Specific Jurisdiction Over Defendant.

Plaintiff's attempt to assert specific jurisdiction over defendant also fails. Section 13-423(a)(4) of the District of Columbia long-arm statute provides specific jurisdiction over a foreign defendant, only if (i) plaintiff suffered a tortious injury in the District of Columbia; (ii) the injury was caused by defendant's act or omission outside of the District; and (iii) defendant had consistent, enumerated contacts with the District of Columbia. See id. In addition to those three requirements, the Court must also ensure that the exercise of jurisdiction satisfies the Constitutional requirements of due process. The allegations in the Complaint, even combined with the assertions in plaintiff's Opposition, fall far short of those requirements.

Plaintiff's Opposition offers up the following new jurisdictional assertions:

- Defendant's 1992 charge of defamation against plaintiff and his subsequent imprisonment in Korea damaged plaintiff's reputation not only in Korea but also in Washington, D.C. See Opp. at 6.

- After his return to the United States, plaintiff required "about two months" of medical care. Id.

- Defendant visited the District of Columbia and surrounding area in September 1985 to meet with political supporters and solicit political support for his presidential candidacy. See id. at 7.

- Defendant's local supporters raised money and held rallies in the Washington area in 1985. "After the unsuccessful election in 1987, defendant continued to maintain his contacts with local supporters for his election campaign again in 1992." Id.

- "[O]ver a period of decades, defendant visited Washington, D.C. many times to meet with his American friends and political supporters for the purpose of enhancing his leadership position in Korea." Id.

- Defendant is now Honorary Chairman of the Committee for Democratization of North Korea, which has a branch office in Washington, D.C. Id. at 8.

These assertions have nothing to do with plaintiff's allegations against defendant and, as set forth below, cannot form a basis for the exercise of personal jurisdiction over him.

## 1.    Plaintiff Alleges No Injury Suffered In The District Of Columbia.

Plaintiff attempts to establish an injury suffered in this forum for purposes of the long-arm statute by asserting that he both required medical treatment here and bore damage to his reputation here after returning to the United States. See Opp. at 6. This, of course, states continuing damages here, not that plaintiff was injured here. Indeed, the allegations of the Complaint make clear that, to the contrary, plaintiff was *injured* in South Korea. In Doe v. Israel, 400 F.Supp.2d 86, this Court considered substantively identical allegations: Plaintiffs, most of whom were "either U.S. citizens or permanent resident aliens," see id. at 96, asserted that, although "[a]ll of the alleged human rights violations occurred in the West Bank or on Israeli soil," plaintiffs subsequently suffered harms in the United States, including pain and suffering, emotional distress, and financial harm. See id. at 97-98. The Court, however, concluded under the analogous commercial-activity exception of the Foreign Sovereign Immunities Act that continuing damages here did not state even a 'direct effect' in the United States -- much less an *injury* in the United States:

> [C]ourts ordinarily do not find direct effects in cases that concern injuries suffered on foreign soil by plaintiffs who subsequently returned to the United States. . . . The harms alleged to have befallen the individual plaintiffs here are too dislocated -- *the immediate harm, in all cases, is the harm suffered in the West Bank.* Regardless of how quickly plaintiffs returned to the United States, any harm suffered here was merely a continuation of, and removed from, the harm incurred abroad.

Id. at 106-07 (internal citations omitted, emphasis added); see also Martin v. Republic of So. Africa, 836 F.2d 91, 95 (2d Cir. 1987) ("all courts that have considered a claim for personal injuries sustained in a foreign state when the plaintiff asserted that the 'direct effect in the United States' was the continued physical suffering and consequential damages that persisted once the plaintiff returned" have rejected that argument; citing cases). Thus, plaintiff states no tortious injury suffered within the District for purposes of the District of Columbia long-arm statute, and his attempt to invoke specific jurisdiction over defendant pursuant to that statute fails. See id.[1]

### 2.    **Plaintiff Makes No Sufficient Allegation Of Causation.**

As discussed in Part V.D.3, infra, and in defendant's Initial Memorandum, plaintiff makes only a single conclusory allegation of causation. See Init. Mem. at 35-36 (citing cases). Plaintiff now asserts in his Opposition that "defendant conspired with the prosecutors," and thus that jurisdiction may be had on a theory of conspiracy. See Opp. at 6. Plaintiff's attempt to show that his injuries were caused by such a conspiracy is deficient, because the Complaint fails not only to allege a *prima facie* case of conspiracy, but indeed fails to allege conspiracy at all. See Youming Jin v. Ministry of State Sec., 335 F.Supp.2d 72, 79 (D.D.C. 2004) (to invoke jurisdiction based on conspiracy, plaintiff must make *prima facie* showing of pertinent jurisdictional facts). Instead, plaintiff makes a conclusory assertion of conspiracy in his Opposition. Yet even if plaintiff had made such a conclusory allegation in his Complaint, it would have been categorically insufficient. See id.; infra Point V.D.3 (citing cases).

---

[1] Additionally, although plaintiff resides in Virginia, he curiously contends that he suffered injury in the District of Columbia. Yet plaintiff has not alleged that he was harmed in the District of Columbia in any way except, again, that his reputation was damaged in the District and he sought medical attention in the District. See Opp. at 6. Again, this allegation is insufficient to satisfy the "tortious injury" prong of the long-arm statute. See, e.g., Kline v. Williams, 2006 WL 758459, *3 (D.D.C. March 23, 2006) (declining to exercise jurisdiction over defendant because plaintiff was resident of Maryland and did not make allegations sufficient to show that he suffered injury in District of Columbia); Reese v. Geneva Ents., Inc., 1997 WL 214864, *5 (D.D.C. April 18, 1997) (psychological injury occurred in Virginia, plaintiff's home state, not District of Columbia as plaintiff alleged).

### 3.    Defendant Has Not Had Sufficient Personal Contacts With The District Of Columbia To Establish Personal Jurisdiction.

Despite plaintiff's conclusory assertion that defendant "had enumerated contacts with the District of Columbia," see Opp. at 7, none of defendant's activities as a candidate for the South Korean Presidency, and later as President, provides a basis for this Court to exercise jurisdiction over him.  Plaintiff states that defendant visited the District of Columbia in 1985 to meet with political supporters of his candidacy, see Opp. at 7, and that defendant visited the District of Columbia at unspecified times "over a period of decades."  See id.  Neither averment shows the "persistent course of conduct" that the long-arm statute requires.  See Burnett v. al Baraka Inv. & Dev. Corp., 292 F. Supp. 2d 9, 21-22 (D.D.C. 2003) ("Plaintiffs have made a desultory effort to sustain their burden of showing that [defendant]'s visits to the United States ... would support the assertion of personal jurisdiction over him.") (citing Kulko v. Superior Court of California, 436 U.S. 84, 93-94, 98 S.Ct. 1690 (1978) (transitory visits to State are insufficient basis for assertion of in personam jurisdiction over unrelated action).  Moreover, the single specified visit allegedly occurred over two decades ago and is far too stale to serve as a basis for personal jurisdiction here, since jurisdictional contacts are determined as of the time a Complaint is filed.  See, e.g., Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d 44, 52 (2d Cir. 1991) (citing 4 C. Wright & A. Miller, Federal Practice and Procedure, § 1051, at 160-162 (1987) (jurisdictional contacts determined as of filing of Complaint)).

Plaintiff, in apparent recognition of the deficiency of his allegations concerning defendant's contacts with the District of Columbia, tries to bolster them by asserting that "Defendant Kim's local supporters raised money from Korean residents and businesses in [the] Washington area."  See Opp. at 7 (emphasis added).  Tellingly, plaintiff does not make this allegation about defendant himself.  This allegation thus does not show the "persistent contacts"

that the long-arm statute requires.  See, e.g., Doe v. Israel, 400 F.Supp.2d at 98 (finding plaintiffs

failed to show *defendants* conducted fundraising activities here).

Plaintiff also newly asserts that the Court may exercise jurisdiction over

defendant because he serves as "Honorary Chairman of the Committee for Democratization of

North Korea."  This allegation is insufficient to establish jurisdiction over defendant in his

individual capacity.  See Richard v. Bell Atlantic, 946 F.Supp. 54, 73-74 (D.D.C 1996) ("[T]he

Court … does not have jurisdiction over individual officers and employees of [the company] just

because it may have jurisdiction over [the company].").  Plaintiff must allege that defendant's

*personal* contacts with the forum are sufficient to subject him to jurisdiction here.  See Calder v.

Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 1487-88 (1984) (employee's contacts with forum must

be assessed individually); Wiggins v. Equifax, Inc., 853 F. Supp. 500, 503 (D.D.C. 1994)

("[p]ersonal jurisdiction over the employees or officers of a corporation in their individual

capacities must be based on their personal contacts with the forum").  In sum, plaintiff avers, at

most, stale, attenuated, and transitory contacts, not the "persistent course of business" that the

District of Columbia's long-arm statute requires  Because plaintiff thus has failed to establish

*any* of the requirements of the long-arm statute -- much less all of them -- this Court lacks

jurisdiction over defendant, and the Complaint must be dismissed.

Finally, plaintiff has failed to establish that defendant's contacts with the District

of Columbia meet the minimum threshold for due process.  See Lee v. State Compensation Ins.

Fund, 2005 WL 1903343, *2 (D.D.C. July 13, 2005).  Plaintiff has not proffered anything

sufficient to show that defendant purposely availed himself of the rights and privileges of

American laws and should reasonably have anticipated being haled before this Court.  Thus,

plaintiff has not met the constitutional requirements for the Court to exercise personal

jurisdiction, and the Complaint must be dismissed.  See Init. Mem. at 10-12; Kopff v. Battaglia, 2006 WL 786842, *8 (D.D.C. March, 29, 2006).

II

**THIS COURT LACKS SUBJECT-MATTER
JURISDICTION OVER PLAINTIFF'S CLAIMS.**

As set forth in detail in defendant's Initial Memorandum, plaintiff has thoroughly failed to allege a tort in violation of the law of nations, or that defendant played any part in any such tort.  Accordingly, plaintiff has failed to state a basis for the exercise of subject-matter jurisdiction over his claims, and those claims must be dismissed in their entirety.

A.    **The ATS Does Not Confer Subject-Matter Jurisdiction Over Claims
Of Torture Or Arbitrary Imprisonment By Non-State Actors.**

Plaintiff does not deny that the Complaint is devoid of any allegation that defendant was a state actor when he commenced a defamation action against plaintiff in 1992. See Complaint ¶¶ 2, 4-9.  Rather, plaintiff asserts in his Opposition that defendant was a state actor for ATS purposes merely because he held the post of Assemblyman in Pusan, South Korea, at the time that he commenced the action against plaintiff in Seoul -- despite the fact that plaintiff has nowhere alleged that defendant acted in furtherance of his official duties, or relied upon the rights and privileges of his office, in commencing that action.  Plaintiff also argues, alternatively, that defendant should be deemed to have been a *de facto* state actor because there was "a substantial degree of cooperative action between the state and" defendant in injuring plaintiff. See Opp. at 9.

However, plaintiff does not even attempt to distinguish the cited precedent establishing that defendant's 1992 complaint for defamation -- a complaint that, by definition, was asserted entirely in defendant's private capacity -- neither rendered him a state actor for purposes of plaintiff's claims here, nor establishes that he may be deemed a *de facto* state actor.

See Init. Mem. at 13 n.5 (citing cases); Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248-49 (11th Cir. 2005) (holding that state action was stated by allegation that mayor personally participated in tort, but not by allegation that police were merely in close proximity to tort); see also Browning v. Clinton, 292 F.3d 235, 250 (D.C. Cir. 2002) (on Bivens claim, holding that alleged attempts to intimidate former President's alleged mistress into refraining from publication were not made under color of law, and reflected only a private dispute) (citing Gritchen v. Collier, 254 F.3d 807, 812-13 (9th Cir. 2001) (under analogous § 1983 jurisprudence, police officer's threat to bring defamation action did not constitute state action; "pursuing private litigation was not abuse of the officer's position or authority as a police officer") (internal emendations omitted); Bonsignore v. City of New York, 683 F.2d 635, 639 (2d Cir. 1982) (if tort by state official was not "committed in the performance of any actual or pretended duty," it was not committed under color of law and does not constitute state action).

Moreover, although plaintiff in his Opposition asserts conclusorily that "there was a substantial degree of cooperative action between the state and" defendant in injuring plaintiff, see Opp. at 9, neither the Opposition nor the Complaint itself proffers any assertion of fact that could support that legal conclusion. Instead, plaintiff in his Opposition attempts to rely upon assertions of cooperative action between defendant and other, non-prosecutorial officials during the months and years after plaintiff's incarceration and alleged abuse. See id. at 9-10; Complaint ¶¶ 11-12. Again, however, plaintiff does not even attempt to rebut the previously cited authority establishing that (i) plaintiff must allege facts showing substantial cooperation in the commission of the tort complained of, see Init. Mem. at 13-14 (citing Bao Ge v. Li Peng, 201 F.Supp.2d 14, 20-22 (D.D.C. 2000)), 33-34; (ii) allegations of cooperative action subsequent to the alleged abuse are insufficient to show defendant's complicity therein, see id. at 38 n.18 and Aldana, 416 F.3d at 1248-49; and (iii) the allegations here are insufficient even to warrant liability under the

more lenient command doctrine, much less to show active cooperation by defendant in injuring plaintiff.  See id. at 36 n.17.

In fact, as the Complaint shows, as defendant's Initial Memorandum argued, and as plaintiff's Opposition does not even attempt to deny, plaintiff has not tendered a single allegation of fact showing any cooperation by defendant, of any kind or degree, with the prosecutorial officers who allegedly abused plaintiff.  Because plaintiff has made no allegations whatsoever that might show that defendant cooperated in any way with those officers in abusing plaintiff, defendant may not be deemed to be a *de facto* state actor on the sole ground that he commenced an action against plaintiff for defamation.  See, e.g., Dennis v. Sparks, 449 U.S. 24, 28, 101 S.Ct. 183, 186 (1980) ("[M]erely resorting to the courts . . . does not make a party a . . . joint actor with the judge."); Gritchen, 254 F.3d at 812-13.  Because plaintiff has alleged neither that defendant was a state actor, nor any facts showing defendant to have been a *de facto* state actor, the ATS affords no subject-matter jurisdiction over plaintiff's claims, either for torture or arbitrary detention.  See, e.g., Sosa, 542 U.S. at 736, 124 S.Ct. at 2768 (no cause of action for arbitrary detention unless effected by state actor); Tel-Oren, 726 F.2d at 791-95 (no cause of action for torture unless committed by state actor).  Thus, those claims must be dismissed.

B.    **Plaintiff May Not And Does Not State A Claim For Arbitrary Detention.**

Plaintiff also ignores the authority previously cited to the Court establishing that, after the Supreme Court's holding in Sosa, no cause of action may lie under the ATS for arbitrary detention unless plaintiff was detained pursuant to a state policy practicing or condoning prolonged arbitrary detention.  Plaintiff quotes the Supreme Court's statement in Sosa that "a *single* illegal detention of less than a day, followed by the transfer of custody to lawful authorities and a prompt arraignment, violates no norm of customary international law so well defined as to support" liability under the ATS.  See Opp. at 10-11, quoting Sosa, 542 U.S. at 738,

124 S.Ct. at 2769 (emphasis added). Plaintiff then asserts that his case may be distinguished

from <u>Sosa</u> because he was detained "for a few days" rather than one day. <u>See</u> Opp. at 11. This is

a distinction without a difference, given that that plaintiff complains of a single detention that, as

he himself concedes, was concluded by a prompt indictment and arraignment. <u>See id.</u>; <u>Sosa</u>, 542

U.S. at 738, 124 S.Ct. at 2769.

      Moreover, plaintiff simply ignores the remainder of the Supreme Court's opinion

in <u>Sosa</u>, as well as the previously-cited authority establishing that, after <u>Sosa</u>, a claim for

arbitrary detention simply will not lie in the case of a single arbitrary detention standing alone,

but only where the alleged arbitrary detention was effected pursuant to a state policy practicing

or condoning such detention. <u>See</u> Init. Mem. at 15; <u>Sosa</u>, 542 U.S. at 735-38, 124 S.Ct. at 2767-

69 (relying upon Restatement and noting that "[e]ven the Restatement's limits are only the

beginning of the enquiry"); <u>Doe v. Exxon Mobil Corp.</u>, 393 F.Supp.2d 20, 25 (D.D.C. 2006)

(after <u>Sosa</u>, claims for individual instance of arbitrary detention non-cognizable as violations of

law of nations, absent showing of "state policy [that] practices, encourages, or condones . . .

prolonged arbitrary detention").

      Finally, plaintiff also entirely fails to rebut the previously-cited authority

establishing that, even if a cause of action for a single instance of arbitrary detention were

available to him, his detention was effected pursuant to lawful process and hence was not

"arbitrary" at all. <u>See</u> Init. Mem. at 15. In short, plaintiff has alleged only a single instance of

lawful detention and no South Korean State policy that practices or condones arbitrary detention,

and has entirely failed to rebut the cited authority establishing that he has no cause of action for

arbitrary imprisonment in these premises. Plaintiff's claim for arbitrary detention therefore must

be dismissed.

C.    **Plaintiff Does Not Allege Torture.**

As defendant's Initial Memorandum noted, under the controlling decision of the Court of Appeals for the District of Columbia Circuit in Price v. Socialist People's Libyan Arab Jamahiriya, 294 F.3d 82 (D.C. Cir. 2002), among other authorities, plaintiff's allegation that prosecutorial officers "hit and kicked him hard scores of times on his head, chest, and legs" is insufficient to state torture, as opposed to police brutality, under the TVPA (or, to the extent that such a claim is available, under the ATS).  See Init. Mem. at 16-21, 33 n.16; Price, 294 F.3d at 92-93.  Furthermore, plaintiff does not attempt to rebut the cited authority establishing that, for an act to constitute torture, it must be taken while the plaintiff was under the defendant's custody or physical control, see Init. Mem. at 21 n.9, and does not attempt to excuse his failure so to allege.  The Court therefore has no subject-matter jurisdiction over plaintiff's claim for torture. See Init. Mem. at 16-21; Price, 294 F.3d at 93-94 (where plaintiffs alleged that they had been "kicked, clubbed and beaten" and subjected to "physical, mental and verbal abuse" over the course of 105-day detention, those allegations were insufficiently specific to ensure that conduct complained of was severe enough to constitute "torture" within the meaning of the law); see also Exxon Mobil, 393 F.Supp.2d at 28 (where plaintiff fails to state claim under ATS, Court also lacks subject-matter jurisdiction).  Accordingly, plaintiff's claim must be dismissed.

D.    **Plaintiff, In Fact, Alleges Only Malicious Prosecution.**

Nowhere in his Opposition does plaintiff attempt to rebut the argument that his claims sound, not in arbitrary detention and torture, but in malicious prosecution; i.e., "the institution of criminal proceedings against another who is not guilty of the offense charged . . . without probable cause and primarily for a purpose other than that of bringing an offender to justice."  See Init. Mem. at 21, quoting Restatement of Torts (2nd) § 653 (1977); compare Opp. at

at 9-12 (failing even to mention malicious prosecution).[2]  Nor does plaintiff deny that malicious

prosecution is not actionable as a violation of the law of nations under the ATS.  Because

plaintiff has conspicuously failed to rebut defendant's argument on this point -- and because the

merit of the argument is clear on the face of the Complaint, see Arce v. Garcia, 400 F.3d 1340,

1343 n.1 (11th Cir. 2005) (in ATS case, Court "focus[es] on the gravamen of the plaintiffs'

claims and not the different ways in which they are styled") -- the Court should deem the

argument conceded, and may dismiss plaintiff's claims in their entirety on this basis alone.

### III

### THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO EXHAUST AVAILABLE REMEDIES IN SOUTH KOREA.

As noted in defendant's Initial Memorandum, plaintiff in a TVPA action is

presumed to have exhausted available remedies in his home country, with the burden being on

defendant to make a showing that those remedies are available and adequate.  Once that showing

is made, however, the burden reverts to plaintiff and requires him to make a showing that the

remedies identified by defendant would, in fact, be futile.  See S. Rep. 102-249, 102nd Cong., 1st

Sess. 1991, 1991 WL 258662 at *9-10; Collett, 362 F.Supp.2d at 242.  If plaintiff fails to do so,

the mandatory language of the statute requires dismissal.  See Pub.L. 102-256, 106 Stat. 73, §

2(b) (1991) (codified at 28 U.S.C. § 1350 note) ("A court shall decline to hear a claim under this

section if the claimant has not exhausted adequate and available remedies in the place in which

the conduct giving rise to the claim occurred.") (emphasis added).

Defendant in his Initial Memorandum and the Affidavits in support of this

motion, made a comprehensive and robust showing that the Courts of South Korea are competent

---

[2] Indeed, plaintiff's Opposition inadvertently admits that this is so.  See Opp. at 4 ("[P]laintiff Son believes that he can now sue defendant Young Sam Kim on the basis of the new corroborating discovery," which 'discovery' has nothing to do with whether or not plaintiff was tortured, but rather with the truth or falsity of defendant's 1992 claim of defamation).

and fair, that the laws of South Korea provide ample remedies for the conduct complained of,

and that those Courts have both the competence and the integrity to adjudicate inflammatory

claims such as plaintiff's.  See Init. Mem. at 24-26 (noting that U.S. Courts routinely dismiss

actions better heard in South Korea on grounds of *forum non conveniens*; listing civil and

criminal provisions of South Korean law applicable to conduct alleged and describing South

Korean Courts' experience with controversial cases against senior government officials);

Affidavit of the Hon. Yeo Sang-Kyu In Support of Motion to Dismiss, Docket No. 4, Att. 2, ¶ 3

("Yeo Aff.") (Affidavit of former Judge of highest Court in South Korea, demonstrating South

Korean Courts routinely adjudicate controversial claims such as plaintiff's fairly, as they have

done before); Affidavit of Timothy J. McCarthy, Docket No. 4, Att. 3 ("McCarthy Aff.").

Plaintiff acknowledges that the Courts of South Korea are generally competent

and fair.  See Opp. at 13.  Plaintiff also does not deny that the Constitution and laws of South

Korea comprehensively and strictly prohibit the conduct of which he complains, and provide

both civil and criminal remedies therefor.  See Init. Mem. at 24-25; McCarthy Aff., ¶¶ 2-3.  Most

importantly, plaintiff has made no showing that the numerous South Korean remedies identified

by defendant would, in fact, be futile.

Plaintiff has offered no Affidavit or other support for the bald statement that the

Courts of South Korea would "deprive[ him] of all remedies or treat[ him] unfairly."  See Opp. at

15.  Instead, plaintiff asserts that journalists who have criticized the policies of the South Korean

government toward North Korea, as he has, have been the subject of persecution for their

criticisms.  See id. at 13-14.  But plaintiff does not allege that defendant in 1992 brought a

Complaint against plaintiff for that reason.[3]  And even in his Opposition -- to say nothing of the

---

[3] To the contrary, as plaintiff himself admits, the 'sunshine policy' to which plaintiff attributes his
political disfavor was not implemented until after defendant's term had ended in 1998.  See Opp. at 13.

affidavit that plaintiff has failed to provide -- plaintiff does not once identify a single journalist who has been persecuted *for asserting claims such as plaintiff's here*, or a single instance in which South Korean Courts have failed to fairly and properly adjudicate any such claim.  See Opp. at 13-14 (asserting without names, dates, or details that several journalists have been persecuted in South Korea, but omitting to state offenses forming bases of prosecutions).[4] Moreover, plaintiff's calumnies against the Courts of South Korea are belied by his admission that he himself apparently is *presently a fugitive from those Courts*, again on unrelated charges that he denies but fails even to identify.  See Opp. at 13-14 (revealing that plaintiff's passport was voided because of "two pending criminal charges against plaintiff which plaintiff states were not true and were fabricated").  Finally, plaintiff now admits that he does hold a valid South Korean passport, and that the 'voiding' thereof was wholly unrelated to the events giving rise to his claims.[5]

---

[4] To the contrary, in 2002 several South Korean officers were arrested and prosecuted for their parts in the death of a murder suspect and the torture of his accomplice, again belying plaintiff's assertion that South Korean Courts would deny him a fair hearing.  See, e.g., National Human Rights Commission of Korea, "Two Investigators Used 'Water Torture' on Accomplice of Murdered Suspect," located at http://www.humanrights.go.kr/eng/about/news/NeComitArticleView.jsp?seqid=62&page_num=8&search=&choice= (visited May 22, 2006).  The Court may take judicial notice of this official release of the Commission (an organ of the South Korean government), and may do so without converting the present motion into one for summary judgment.  See Fed. R. Evid. 201(b)(2), (d); Ramirez de Arellano v. Weinberger, 745 F.2d 1500, 1569 n.3 (D.C. Cir. 1984) (taking judicial notice of documents evidencing acts of foreign state), rev'd on other grounds, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985); Hotel Employees and Rest. Employees Union, Local 100 v. New York Dep't of Parks and Recreation, 311 F.3d 534, 549 (2d Cir. 2002) (taking judicial notice of website information, where website's authenticity not in dispute and posting capable of accurate and ready determination).

[5] Plaintiff also asserts that "prosecutions and trials of political cases are often guided by the presidential office and ruling party" -- and that he could not obtain justice in South Korea, not only during defendant's term, but also "during [P]resident Dae Jung Kim's . . . term from 1998 to 2003, and during the current government of . . . Mu Hyun No from 2003 until present," see Opp. at 13-14 -- even though President Dae Jung Kim and his successor were from parties *opposed* to that of defendant.  See Don Oberdorfer, "The Two Koreas: A Contemporary History," at 407 (Basic Books 2001); Init. Mem. at 2 n.2.  Given that plaintiff asserts that he could not obtain justice in South Korea at *any* time in the last 14 years, even as the parties in power have changed and as South Korean Courts have heard similar cases, defendant is left to wonder what possible change might restore plaintiff's faith in those Courts.

Thus, while plaintiff's assertion of futility would suffice initially to raise the *presumption* that South Korean remedies would be futile, see Init. Mem. at 23, such an assertion -- contained not in the pleadings or even in a supporting affidavit, but only in plaintiff's Opposition brief -- cannot overcome defendant's specific, comprehensive, and credible showing that the Courts of South Korea are competent to hear plaintiff's claims, provide ample remedies for those claims, and would adjudicate those claims fairly. See, e.g., Collett, at 243 ("plaintiffs are remiss for neglecting to respond to" defendant's showing of non-futility; denying dismissal only because defendant made no showing of available remedies in home country). Indeed, if a plaintiff may overcome a showing such as defendant's merely by flatly asserting futility in his brief, without any affidavit or other showing in support of that assertion, the exhaustion requirement would effectively be written out of the TVPA.

Thus, defendant has amply met his burden by showing that the Courts of South Korea are competent to handle claims such as plaintiff's, have done so before, and possess the professional integrity to do so again on the facts alleged. Plaintiff in response has offered nothing to support the proposition that the Courts of South Korea would fail to address his claims fairly, and the record establishes that they would not fail to do so. See Init. Mem. at 25-26; Yeo Aff. ¶ 3. Accordingly, plaintiff's TVPA claim must be dismissed for failure to exhaust the remedies available in South Korea. See 28 U.S.C. § 1350 note; see also Init. Mem. at 27 (applying same argument to ATS claims).

## IV

### THE COMPLAINT MUST BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS.*

In responding to defendant's argument for dismissal on grounds of *forum non conveniens*, plaintiff relies entirely upon a single decision from the United States Court of Appeals for the Seventh Circuit. See Opp. at 14-15, citing Kamel v. Hill-Rom Co., Inc., 108

F.3d 799, 802 (7th Cir. 1997).  Plaintiff apparently does so because the wording of that opinion

allows him to venture an argument that is plainly foreclosed, not only by the law of this Circuit,

but also by directly applicable Supreme Court precedent (which itself is cited in the Seventh

Circuit's opinion, as plaintiff himself notes).  Specifically, plaintiff quotes the statement of the

Seventh Circuit in Kamel that "all parties" must be "within [an alternate] forum's jurisdiction" in

order for dismissal on *forum non conveniens* grounds to be appropriate.  See Opp. at 15.  In

reliance upon that statement, plaintiff argues, dismissal on such grounds is inappropriate here,

because he is a South Korean national who resides in Virginia.  See id.

   This argument is plainly meritless.  First, because plaintiff remains a national of

the Republic of Korea, and because the events giving rise to his claims occurred in South Korea,

there is no jurisdictional impediment whatsoever to a proceeding there upon his claims.  He and

his claims thus are squarely "within the jurisdiction" of the Courts of South Korea.  See Civil

Act, Chap. V (Torts), Art. 750; Yeo Aff. ¶ 3.  Moreover, as the precedents of this Circuit and the

Supreme Court make clear, plaintiff's choice of forum receives presumptive deference, and the

relevant question thus is whether the *defendant* is susceptible to process in the alternate forum

(as defendant here is, and as plaintiff here does not deny).  See, e.g., Piper Aircraft Co. v. Reyno,

454 U.S. 235, 254 n.22, 102 S.Ct. 252, 265 n.22 (1981).

   As Piper makes clear, the fact that plaintiff resides in the United States means

only that the deference accorded his choice of forum may not be *discounted* because he is a

foreign national, as would be done if he were a foreign national resident overseas.  See id. at 254,

102 S.Ct. at 266 ("The District Court's distinction between resident or citizen plaintiffs and

foreign plaintiffs is fully justified. . . . [A] plaintiff's choice of forum is entitled to greater

deference when [it is his] home forum.").  It does *not* mean, as plaintiff wishes, that his choice of

forum must be accepted.  The presumption in favor of plaintiff's choice of forum still may be

overcome by a proper showing of an adequate alternative forum that better serves the private and public interests -- a showing that defendant here has amply made, and that plaintiff has barely even attempted to rebut. See id. at 254 n.23, 102 S.Ct. at 266 n.23 ("Citizens *or residents* deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.") (emphasis added).

      As to the merits of defendant's argument, plaintiff does not and cannot deny that South Korea provides comprehensive civil and criminal remedies for the conduct complained of, that defendant is susceptible to service of process in South Korea, and that there is no procedural impediment to adjudication of plaintiff's claims in South Korea. Nor does plaintiff deny that the private interests of the parties weigh heavily in favor of dismissal (largely because all but one of the relevant witnesses, and presumably all of the relevant documentary evidence, reside in South Korea). Nor does he contest that the public interests of both fora demand that a South Korean Court hear these claims, which are of unique interest to the South Korean Courts and are in need of adjudication by a tribunal prepared to address plaintiff's 14-year-old dispute in the proper South Korean procedural and legal context. See Init. Mem. at 30-31.

      Instead, plaintiff again offers only the conclusory and unsupported assertion that he would "be deprived of all remedies or treated unfairly in Korea" -- and at the same time effectively admits that, because he does hold a South Korean passport, the only real impediment to adjudication in South Korea is the fact that he is subject to unrelated criminal charges there. See Opp. at 15. Again, this unsupported and unconvincing assertion of futility cannot overcome defendant's extensive showing to the contrary, and cannot commit this Court to adjudicate plaintiff's claims here, half a world away from the relevant evidence and in derogation of the

private interests of the parties and the public interests of *both* fora.   See, e.g., Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 526, 67 S.Ct. 828, 833 (1947) (affirming dismissal; "in response to defendant's motion and supporting affidavits, which *prima facie* established vexation to defendant and the inappropriateness of the court, the plaintiff shows not a single fact provable by record or witness within the district . . . where he has brought suit"); Jackson v. American Univ. in Cairo, 52 Fed.Appx. 518, 519 (D.C. Cir. Dec. 13, 2002) (affirming dismissal; "[p]laintiffs question . . . the conclusion that Egypt is an adequate forum, but in the district court they offered no evidence to rebut the university's affidavit from an Egyptian attorney regarding the adequacy of the forum").   Accordingly, plaintiff's claims must be dismissed on grounds of *forum non conveniens.*

## V

## THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT.

Finally, plaintiff in his Opposition offers virtually no argument at all in support of the proposition that he has stated his claims against defendant.  See Opp. at 15-16.  In particular and at bottom, plaintiff provides no explanation of the basis upon which his claims against *this* defendant are based.  Especially under the careful scrutiny that such inflammatory charges demand, the Complaint thus fails to give defendant "fair notice of what the plaintiff['s] claim is and the ground upon which it rests."  Burnett, 274 F.Supp.2d at 103-04.  Plaintiff's claims therefore must be dismissed.

### A.   Because Plaintiff Does Not Allege That Defendant Was A State Actor, Plaintiff States No Claim.

As discussed supra Point II.A, the Complaint does not allege that defendant was a state actor, and as the Complaint does not controvert, defendant acted wholly in his private capacity when he brought a complaint against plaintiff for defamation in 1992.  Moreover, plaintiff alleges no facts showing substantial cooperation by defendant with prosecutorial

officers in the alleged abuse of plaintiff, from which the Court might conclude that defendant was a *de facto* state actor.  See supra Point II.A.; Init. Mem. at 13-14.  Because plaintiff alleges neither that defendant was a state actor, nor any facts from which the Court might conclude that he was a *de facto* state actor, there is no claim available to plaintiff for torture (or arbitrary detention) under the ATS.  See Sosa, 542 U.S. at 736, 124 S.Ct. at 2768; Tel-Oren, 726 F.2d at 791-95; Beanal, 197 F.3d at 165 (dismissing where complaint "devoid of names, dates, locations, times or any facts that would put [defendant] on notice as to what conduct" supported claims for private actor liability).  Accordingly, to the extent that plaintiff's claim for torture relies upon the ATS, the claim must be dismissed.

**B.**    **Plaintiff Fails To State A Claim For Arbitrary Detention.**

As discussed in Point II.B, supra, plaintiff ignores the cited authority establishing that he may not and does not state a claim for arbitrary detention under the ATS.  See Sosa, 542 U.S. at 736-37, 124 S.Ct. at 2768-69; Exxon Mobil, 393 F.Supp.2d at 25.  Moreover, because, according to plaintiff's own allegations, his detention was not arbitrary at all but incident to lawful process, he may not state a claim for that detention.  See Init. Mem. at 36.  Thus, again, plaintiff's claim for arbitrary imprisonment must be dismissed.

**C.**    **Plaintiff Alleges Only Malicious Prosecution.**

As noted supra, plaintiff makes no attempt to rebut the argument that his Complaint in fact states the tort of malicious prosecution.  See supra Point II.D; Restatement of Torts (2nd) § 653 (1977).  Hence, the Complaint does not state a claim cognizable under either the ATS or TVPA.  See supra Point II.D; Init. Mem. at 20-22.  Accordingly, the Complaint must be dismissed in its entirety.

>    D.    **Plaintiff Has Failed To Allege Facts Showing That Defendant
>          Committed Any Tort In Violation Of The Law Of Nations.**

>        1.    **Plaintiff Has Failed To State A Claim For Torture.**

For the reasons stated in Point II.C, supra, plaintiff's allegation that prosecutorial officers "hit and kicked him hard scores of times on his head, chest, and legs" is insufficient to state torture under the TVPA (or, to the extent that such a claim is available, under the ATS). See Init. Mem. at 16-21; Price, 294 F.3d at 93-94 (allegations that plaintiffs were "kicked, clubbed and beaten" and subjected to "physical, mental and verbal abuse" throughout 105-day detention insufficient to state torture). Because plaintiff has not alleged torture, no relief can be granted under the TVPA (or the ATS). Plaintiff's claim for torture therefore must be dismissed.

>        2.    **Plaintiff's Allegation Of Causation Is Wholly
>              Conclusory And Hence Cannot State A Claim.**

Plaintiff makes no attempt to rebut the cited authority establishing that the sole allegation of causation here ("Defendant's false statement to authorities caused Plaintiff's … torture by the interrogators," see Complaint ¶ 12) is wholly conclusory and hence insufficient to state proximate causation in support of his claim for torture. Compare Opp. at 6, 15-16 with Init. Mem. at 35-36 (citing cases); Nix v. Hoke, 139 F.Supp.2d 125, 136 (D.D.C. 2001) (plaintiff's conclusory allegation false testimony by neighbor, former United States Representative, proximately caused damages insufficient to state claim). Accordingly, because plaintiff has alleged no facts showing that defendant's commencement of an action for defamation caused the abuse alleged (and has alleged no facts showing that defendant caused the alleged abuse in any other way, see Point V.D.3, infra), plaintiff's claim for torture must be dismissed.

>        3.    **The Complaint Does Not State Conspiracy
>              In Support Of Any Of Plaintiff's Claims.**

Plaintiff's Opposition makes the conclusory assertion that, "[e]ven if defendant Kim did not commit the injury by himself, he conspired with the prosecutors." See Opp. at 6.

However, no such allegation appears in the Complaint, and even if plaintiff had so alleged, the Complaint is devoid of factual allegations sufficient to support any inference that defendant conspired with prosecutorial officials to abuse plaintiff.  See Init. Mem. at 37-38.  That allegation therefore would have been wholly conclusory, had it been made, and would have been insufficient to state conspiracy in support of any claim.  See id. (citing cases).  Accordingly, because plaintiff has failed to state conspiracy in support of any of his claims (and alleges causation in no other way), plaintiff's claims must be dismissed.[6]

In sum, in the absence of any allegation showing that defendant had any part in the abuse of plaintiff, defendant is left with no idea of the basis upon which plaintiff's claims against him are grounded.  See, e.g., Beanal, 197 F.3d at 165.  Plaintiff thus has failed to "give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," see Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992 (2002), and plaintiff's claims, consequently, must be dismissed in their entirety.

## VI

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

As set forth herein and defendant's Initial Memorandum, even taking the allegations of the Complaint as true, plaintiff has completely failed to state his claims against defendant.  Moreover, plaintiff's Opposition, which pays no heed to the controlling authority to which the Court has been referred, and which floats assertions not contained in the Complaint in a final attempt to avoid dismissal, effectively confirms that plaintiff will not in good faith be able to cure the many fatal defects of his claims.  Finally, plaintiff has neither responded to

---

[6] Plaintiff's Opposition also makes the conclusory assertion that defendant "aided and abetted the alleged abuse."  See Opp. at 16.  However, plaintiff has also failed to state aiding and abetting in support of any of his claims, because his Complaint makes no allegations showing defendant's knowing and substantial assistance of the alleged wrongdoing at the hands of prosecutorial officials.  See Init. Mem. at 38.

defendant's argument for dismissal with prejudice, nor requested leave to amend.  Dismissal of

plaintiff's claims, therefore, should ensue with prejudice.  See, e.g., Newborn v. Yahoo!, Inc.,

391 F.Supp.2d 181, 191 n.10 (D.D.C. 2005) (where plaintiff failed both to request leave to

amend and to respond to argument for dismissal with prejudice, such dismissal granted).

## CONCLUSION

For all of the foregoing reasons and upon the remainder of the record, defendant

Young Sam Kim respectfully requests that this Court dismiss all claims against him, with

prejudice, and award such further relief as this Court may deem just and proper.

Dated: New York, New York
   May 30, 2006

        Respectfully submitted,

        SHEPPARD MULLIN RICHTER & HAMPTON LLP


        By:_____/s/_____
         Robert M. Disch

         1300 I Street, NW
         Eleventh Floor East
         Washington, D.C.  20005
         (202) 218-0000

         James J. McGuire
         30 Rockefeller Plaza
         Suite 2400
         New York, New York  10112
         (212) 332-3800

         *Attorneys for Defendant*
          *Young Sam Kim*

Sy Kim
Irving Kagan
Timothy J. McCarthy
 Of Counsel

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................1

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT .......................................................................................................4

I THIS COURT LACKS PERSONAL JURISDICTION OVER DEFENDANT........................4

    A.    There Is No General Jurisdiction Over Defendant. ................................4

    B.    There Is No Specific Jurisdiction Over Defendant................................5

        1.    Plaintiff Alleges No Injury Suffered In The District Of Columbia............6

        2.    Plaintiff Makes No Sufficient Allegation Of Causation. ...........................7

        3.    Defendant Has Not Had Sufficient Personal Contacts With The District Of Columbia To Establish Personal Jurisdiction..........................8

II THIS COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS. ...........................................................................................10

    A.    The ATS Does Not Confer Subject-Matter Jurisdiction Over Claims Of Torture Or Arbitrary Imprisonment By Non-State Actors.................10

    B.    Plaintiff May Not And Does Not State A Claim For Arbitrary Detention. ..........12

    C.    Plaintiff Does Not Allege Torture....................................................14

    D.    Plaintiff, In Fact, Alleges Only Malicious Prosecution. ....................14

III THE COMPLAINT MUST BE DISMISSED FOR FAILURE TO EXHAUST AVAILABLE REMEDIES IN SOUTH KOREA...........................................15

IV THE COMPLAINT MUST BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*....................................................................................18

V THE COMPLAINT FAILS TO STATE A CLAIM AGAINST DEFENDANT. ...................21

    A.    Because Plaintiff Does Not Allege That Defendant Was A State Actor, Plaintiff States No Claim....................................................21

    B.    Plaintiff Fails To State A Claim For Arbitrary Detention....................22

    C.    Plaintiff Alleges Only Malicious Prosecution. ..................................22

D.  Plaintiff Has Failed To Allege Facts Showing That Defendant Committed Any Tort In Violation Of The Law Of Nations. ................................................. 23

    1.  Plaintiff Has Failed To State A Claim For Torture. ............................... 23

    2.  Plaintiff's Allegation Of Causation Is Wholly Conclusory And Hence Cannot State A Claim. ............................................................. 23

    3.  The Complaint Does Not State Conspiracy In Support Of Any Of Plaintiff's Claims. ....................................................................... 23

VI PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE. ......................... 24

CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

Page

**Cases**

Aldana v. Del Monte Fresh Produce, N.A., Inc.,
    416 F.3d 1242 (11th Cir. 2005) .........................................................................11

Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,
    297 F.Supp.2d 165 (D.D.C. 2003) ........................................................................3

Arce v. Garcia,
    400 F.3d 1340 (11th Cir. 2005) .........................................................................15

Bancoult v. McNamara,
     227 F.Supp.2d 144 (D.D.C. 2002) ....................................................................1, 2

Bao Ge v. Li Peng,
    201 F.Supp.2d 14 (D.D.C. 2000) .........................................................................11

Bonsignore v. City of New York,
    683 F.2d 635 (2d Cir. 1982) ................................................................................11

Browning v. Clinton,
    292 F.3d 235 (D.C. Cir. 2002) .............................................................................11

Burnett v. al Baraka Inv. & Dev. Corp.,
    292 F. Supp. 2d 9 (D.D.C. 2003) ......................................................................8, 21

Calder v. Jones,
    465 U.S. 783, 104 S.Ct. 1482 (1984) ....................................................................9

Dennis v. Sparks,
    449 U.S. 24, 101 S.Ct. 183 (1980).......................................................................12

Doe v. Exxon Mobil Corp.,
    393 F.Supp.2d 20 (D.D.C. 2006).....................................................................13, 14

Doe v. Israel,
    400 F. Supp. 2d 86 (D.D.C. 2005) ...............................................................3, 5, 6, 9

Gritchen v. Collier,
    254 F.3d 807 (9th Cir. 2001) .........................................................................11, 12

Hooker-Robinson v. Rice,
    2006 WL 508343, at *3 (D.D.C. Mar. 1, 2006).......................................................1

W02-EAST:7TJM1\200000036.10

Hotel Employees and Rest. Employees Union, Local 100
  v. New York Dep't of Parks and Recreation,
  311 F.3d 534 (2d Cir. 2002) ............................................................17

Jackson v. American Univ. in Cairo,
  52 Fed.Appx. 518 (D.C. Cir. Dec. 13, 2002).................................21

Kamel v. Hill-Rom Co., Inc.,
  108 F.3d 799 (7th Cir. 1997) .........................................................19

Kline v. Williams,
  2006 WL 758459, *3 (D.D.C. March 23, 2006).............................7

Klinghoffer v. S.N.C. Achille Lauro,
  937 F.2d 44 (2d Cir. 1991) ..............................................................8

Kopff v. Battaglia,
  2006 WL 786842, *8 (D.D.C. March, 29, 2006)...........................10

Koster v. Lumbermens Mut. Cas. Co.,
  330 U.S. 518, 67 S.Ct. 828 (1947)................................................21

Kulko v. Superior Court of California,
  436 U.S. 84 S.Ct. 1690 (1978)........................................................8

Lee v. State Compensation Ins. Fund,
  2005 WL 1903343, *2 (D.D.C. July 13, 2005) ...............................9

Martin v. Republic of So. Africa,
  836 F.2d 91 (2d Cir. 1987) ..............................................................7

Newborn v. Yahoo!, Inc.,
  391 F.Supp.2d 181 (D.D.C. 2005) .................................................25

Nix v. Hoke,
  139 F.Supp.2d 125 (D.D.C. 2001) .................................................23

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252 (1981) .............19

Price v. Socialist People's Libyan Arab Jamahiriya,
  294 F.3d 82 (D.C. Cir. 2002)....................................................14, 23

Ramirez de Arellano v. Weinberger,
  745 F.2d 1500 (D.C. Cir. 1984), rev'd on other grounds, 471 U.S. 1113, 105 S.Ct. 2353, 86
  L.Ed.2d 255 (1985) ........................................................................17

Reese v. Geneva Ents., Inc.,
  1997 WL 214864, *5 (D.D.C. April 18, 1997)................................7

Reuber v. United States,
   787 F.2d 599 (D.C. Cir. 1986) ...................................................................4

Richard v. Bell Atlantic,
   946 F.Supp. 54 (D.D.C 1996) ..................................................................9

Saltany v. Reagan,
   886 F.2d 438 (D.C. Cir. 1989) ...................................................................4

Sosa v. Alvarez-Machain,
   542 U.S. 692, 124 S.Ct. 2739 (2004) ............................................ 1, 12, 13, 22

Stephenson v. Cox,
   223 F.Supp.2d 119 (D.D.C. 2002) .............................................................2

Swierkiewicz v. Sorema N.A.,
   534 U.S. 506, 122 S.Ct. 992 (2002) ........................................................24

Wiggins v. Equifax, Inc.,
   853 F. Supp. 500 (D.D.C. 1994) ...............................................................9

Youming Jin v. Ministry of State Sec.,
   335 F.Supp.2d 72 (D.D.C. 2004) ...............................................................7

**Statutes**

28 U.S.C. § 1350 ...........................................................................................15

42 U.S.C. § 1983 (1994) ...............................................................................11

D.C. Code § 13-423(a)(4) ..............................................................................5

Fed. R. Evid. 201(b)(2) ................................................................................17

Pub.L. 102-256, 106 Stat. 73, § 2(b) (1991) ...............................................15

S. Rep. 102-249, 102nd Cong., 1st Sess. 1991, 1991 WL 258662 at *9-10 ................................15

**Other Authorities**

4 C. Wright & A. Miller, Federal Practice and Procedure, § 1051, at 160-162 (1987) ................8

Civil Act, Chap. V (Torts) ............................................................................19

Restatement of Torts (2nd) § 653 (1977) ................................................14, 22